[No. 53514-5-I.   Division One.   September 12, 2005.]

THE STATE OF WASHINGTON, *Respondent*, v. TRONIE JAMES YOUNG, *Appellant*.

*Tronie James Young*, pro se.

*Oliver R. Davis* (of *Washington Appellate Project*), for appellant.

*Janice E. Ellis, Prosecuting Attorney*, and *Thomas M. Curtis, Deputy*, for respondent.

¶1 Cox, C.J. — Tronie Young appeals his judgment and sentence based on convictions of second degree murder, first degree assault, and unlawful possession of a firearm (VUFA). At issue is whether the trial court abused its discretion by denying Young's motion for a mistrial after the court mistakenly disclosed to the jury venire that he had a prior second degree assault conviction. The court and all counsel had previously agreed that the nature of this prior conviction would not be disclosed. Young also contends that the court's admission of the perpetuation deposition testimony of a prosecution witness violated his right to confrontation under the state and federal constitutions. Because the mistaken disclosure of the nature of the prior conviction to the jury was an error that was not harmless, we reverse and remand for a new trial.

¶2 Young, Joe Tavares, and Jamal Holmes went to a drug buy arranged by Jeff Curran at Curran's apartment. During an attempt by Young, Tavares, and Holmes to rob the drug dealer and Curran, Curran was shot and wounded in the back of the head. The drug dealer died as a result of multiple gunshot wounds.

¶3 The State charged Young with aggravated first degree murder, first degree assault, and first degree unlawful

possession of a firearm. Following the introductions of counsel and clients to the jury venire at trial, the court read the charges against Young directly from the information. Reading from Count III of that document, unlawful possession of a firearm, the court told the jury that Young's prior conviction was "of a serious offense . . . to wit: Second Degree Assault. . . . "[1] After the jury had been excused, Young moved for a mistrial, which the court denied.

¶4 The jury convicted Young of second degree murder and first degree assault, both with deadly weapon enhancements. It also convicted him of first degree unlawful possession of a firearm. Because of his prior qualifying felony conviction for second degree assault, the court sentenced him as a persistent offender to two consecutive life sentences, without the possibility of parole. The court also imposed a concurrent term of 116 months for the VUFA conviction.

¶5 Young appeals.

## MISTRIAL MOTION

¶6 Young argues that the trial court abused its discretion when it denied his motion for a mistrial after the court's inadvertent disclosure to the jury venire of Young's prior second degree assault conviction. He further argues that the error was not harmless and required reversal of his convictions. We agree.

¶7 As a preliminary matter, we consider the State's contention that Young is precluded from appealing the alleged error because he himself invited it by requesting the court to read "the actual charging document indicating

---

[1] Count III of the information stated, in full:

UNLAWFUL POSSESSION OF FIREARM IN THE FIRST DEGREE, committed as follows: That the defendant, on or about the 21st day of June, 2002, having previously been convicted in this state or elsewhere of a serious offense as defined in RCW 9.41.010(12), to-wit: Second Degree Assault, did knowingly own or have in his possession or under his control a firearm; proscribed by RCW 9.41.040(1)(a), a felony.

what Mr. Young is accused of . . . ." Invited error has no application to this case.

¶8 The invited error doctrine prevents a defendant from appealing an action of the trial court that the defendant himself procured.[2] This prevents counsel from "setting up" the trial court by seeking a specific action of the court and then seeking reversal on the basis of that same action.[3]

¶9 Here, the parties expressly agreed not to disclose the nature of Young's prior offense and the court accepted that stipulation, subject to the parties working out the express language of what would be read to the jury. Nevertheless, the court read to the jury venire directly from the information what the charges were for this case. In doing so, it is clear that the court inadvertently included the nature of Young's prior offense—second degree assault— when it read from that document.

¶10 The State cites to cases where the defendant proposed a favorable or advantageous, though erroneous, jury instruction or sentence and then relied on the error as a basis for appeal.[4] There simply is no basis to conclude from the circumstances in this record that defense counsel intended that the court reveal to the jury the very information that the parties had just agreed to conceal from it. This was a trial irregularity no one intended, not invited error.

¶11 We move to the substance of the motion for mistrial. A trial court's denial of a motion for mistrial " 'will be overturned only when there is a "substantial likelihood"

---

[2] *State v. Henderson,* 114 Wn.2d 867, 870, 792 P.2d 514 (1990); *State v. Lewis,* 15 Wn. App. 172, 176-77, 548 P.2d 587 (1976) (holding that when a criminal defendant makes a tactical choice in pursuit of some real or hoped for advantage, he may not later urge his own action as a ground for reversing his conviction).

[3] *State v. Meggyesy,* 90 Wn. App. 693, 707, 958 P.2d 319 (1998) (finding no invited error where the defendant did not invite the particular error he raised on appeal).

[4] *In re Pers. Restraint of Breedlove,* 138 Wn.2d 298, 312, 979 P.2d 417 (1999) (the court will not review the exceptional sentence the defendant agreed to in exchange for reduced charges); *State v. Boyer,* 91 Wn.2d 342, 345, 588 P.2d 1151 (1979) (the court will not review an instruction proposed by the appealing party).

the prejudice affected the jury's verdict.' "[5] In determining whether the effect of an irregular occurrence at trial affected the trial's outcome, we examine: (1) the seriousness of the irregularity; (2) whether it involved cumulative evidence; and (3) whether the trial court properly instructed the jury to disregard it. *Hopson*.[6] The Supreme Court has maintained that " 'the trial judge is best suited to judge the prejudice of a statement . . . .' "[7] We review the grant or denial of a motion for mistrial for abuse of discretion.[8]

### *Seriousness of the Irregularity*

¶12 Young first contends that disclosure of the nature of his prior conviction as an assault created prejudice so substantial that it could be cured by nothing short of a new trial. We agree.

¶13 Two cases illustrate the problem. In *Old Chief v. United States*,[9] the defendant was charged with several crimes, including possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g)(1). The prosecutor rejected the defendant's offer to stipulate to a previous felony conviction, and this refusal was upheld on appeal.[10] In reversing, the United States Supreme Court acknowledged that the standard rule that "a defendant's Rule 403 objection offering to concede a point generally cannot prevail over the Government's choice to offer evidence showing guilt and all the circumstances surrounding the offense."[11] However, the *Old Chief* Court concluded that a trial court

---

[5] *State v. Greiff*, 141 Wn.2d 910, 921, 10 P.3d 390 (2000) (quoting *State v. Russell*, 125 Wn.2d 24, 85, 882 P.2d 747 (1994)).

[6] *State v. Hopson*, 113 Wn.2d 273, 284, 778 P.2d 1014 (1989); *Greiff*, 141 Wn.2d at 921.

[7] *Greiff*, 141 Wn.2d at 921 (quoting *State v. Weber*, 99 Wn.2d 158, 166, 659 P.2d 1102 (1983)).

[8] *Greiff*, 141 Wn.2d at 921.

[9] 519 U.S. 172, 117 S. Ct. 644, 136 L. Ed. 2d 574 (1997).

[10] *Old Chief*, 519 U.S. at 174.

[11] *Old Chief*, 519 U.S. at 183.

abuses its discretion when the trial judge "spurns such an offer and admits the full record of a prior judgment, when the name or nature of the prior offense raises the risk of a verdict tainted by improper considerations, and when the purpose of the evidence is solely to prove the element of prior conviction."[12]

¶14 Similarly, *State v. Johnson*[13] involved a prosecution for two assaults and for unlawful possession of a firearm by a convicted felon. Relying on *Old Chief*, the *Johnson* court held that the trial court erred in admitting a prior rape conviction to prove the element of a past felony conviction when Johnson proffered a stipulation to "a prior felony conviction," without disclosing the nature of the felony.[14] The court held that the probative value of the conviction was negligible in light of the stipulation, while the unfair prejudice was significant: "[T]here was a significant risk that the jury would declare guilt on the two assault charges based upon an emotional response to the rape conviction rather than make a rational decision based on the evidence."[15]

¶15 Here, as in both *Johnson* and *Old Chief*, Young was prosecuted for, among other crimes, being a felon in possession of a firearm. An element of the State's case on this charge was to prove that Young had previously been convicted of a serious offense. He asserted, and both the State and the court agreed, that disclosure of the nature of his prior conviction as part of the State's proof of the current VUFA charge would be inherently prejudicial. Likewise, the court and all counsel agreed that a proper stipulation to be read to the jury would be an appropriate way to minimize the inherent prejudice while, at the same time, allowing the State to prove its case. Like *Johnson* and *Old*

---

[12] *Old Chief*, 519 U.S. at 174.

[13] 90 Wn. App. 54, 950 P.2d 981 (1998).

[14] *Johnson*, 90 Wn. App. at 62-63.

[15] *Johnson*, 90 Wn. App. at 63.

*Chief*, the nature of Young's earlier crime had no relevance to the current charged offenses.

¶16 However, in the initial explanation of the charges to the jury venire, the court read directly from the charging information, which stated that Young's prior qualifying offense for the VUFA charge was "a serious offense as defined in RCW 9.41.010(12), to-wit: Second Degree Assault." It appears that Young did not object immediately. But after the jury was excused, he moved for a mistrial. The court denied the motion, explaining that it had no opportunity to review the written stipulation prior to Young's motion.

¶17 The following day the court further explained its rationale for denying the motion the previous day:

> I was . . . not aware what counsel wanted with respect to advising the jury of the charges. . . . We had not had any discussion with respect to how [to] advise the jury on Count III without mentioning second degree assault. Finally, there had been no request for a sidebar or recess once I began reading the information to the jury.[16]

¶18 While it is clear from the court's explanation and the record that the court inadvertently disclosed the nature of the prior conviction, it is equally clear that the disclosure was inherently prejudicial. The court's explanation of its rationale for denying the motion for mistrial does not address that inherent prejudice.

¶19 When the sole purpose of the evidence is to prove the element of the prior conviction, revealing a defendant's prior offense is prejudicial in that it raises the risk that the verdict will be improperly based on considerations of the defendant's propensity to commit the crime charged.[17] This risk is especially great when the prior offense is similar to the current charged offense.[18]

---

[16] Report of Proceedings (Oct. 20, 2003), at 58.

[17] *Old Chief*, 519 U.S. at 174; *Johnson*, 90 Wn. App. at 63.

[18] *Old Chief*, 519 U.S. at 185.

¶20 No one can seriously dispute that disclosure that an accused has been previously convicted of second degree assault is not a serious irregularity that is inherently prejudicial. Here, like the prior conviction for second degree assault, two of the current charges, are also violent felonies—murder and first degree assault. And, despite the State's suggestion that this case is distinguishable from the cases we have discussed because those cases involved the presentation of evidence and this does not, we see no valid distinction. Prejudicial impact is not, in our view, limited to the admission or exclusion of evidence. Disclosure of this prejudicial information to the jury was inherently prejudicial. Moreover, the observation that the defense did not request a sidebar immediately after the court read the information is of no moment. Counsel moved for a mistrial as soon as the jury was excused.

### Cumulative Evidence

¶21 We move to the second criterion, cumulative evidence. Here, there was nothing else that disclosed to the jury the nature of the prior offense, either at the time of the trial irregularity or thereafter. Thus, the second prong of the *Hopson* test is satisfied.

### Curative Instruction

¶22 The final criterion of the *Hopson* test—giving a corrective instruction—is also at issue. Following the inadvertent disclosure of the nature of Young's prior conviction as a second degree assault, the court did not specifically address with the jury the unintentional disclosure. Nor did the court instruct the jury that it could not consider the prior act for any purpose other than determining Young's guilt on the VUFA charge. Thus, even if one assumes that any instruction could have cured this trial irregularity, the jury was never told to disregard the disclosure.

¶23 Instead, the court issued a standard instruction that "the Information in this case is only an accusation against

the defendants which informs them of the charges. You are not to consider the filing of the Information or its contents as proof of the crimes charged." This instruction fails to adequately address the problem of the prejudicial impact of the inherently prejudicial disclosure.

¶24 While it is presumed that juries follow the instructions of the court, an instruction that fails to expressly direct the jury to disregard evidence, particularly where, as here, the instruction does not directly address the specific evidence at issue, cannot logically be said to remove the prejudicial impression created by revelation of identical other acts.[19]

¶25 In *State v. Hopson*, a prosecution witness admitted on the stand that the victim had known the defendant " 'three years before he went to the penitentiary the last time.' "[20] The trial court instructed the jury specifically to disregard the answer. In addition, the court, in denying defense counsel's mistrial motion "gave the defendant the opportunity to talk to the jurors individually regarding the statement, the instruction, and whether it would 'affect their ability to be fair.' "[21]

¶26 Here, the trial court neither instructed the jury to disregard the unintentional disclosure nor offered other curative mechanisms to address the irregularity. Rather, the jury venire was left with the knowledge that Young was previously convicted of second degree assault, a violent crime, before it even heard the State's case on the current murder, assault, and VUFA charges.

¶27 We conclude that the trial irregularity was serious, that there was no cumulative evidence on the nature of Young's prior conviction, and that there was no effective curative instruction or other curative action taken to ameliorate the inherent prejudice of disclosure.

---

[19] *State v. Miles*, 73 Wn.2d 67, 71, 436 P.2d 198 (1968) (citing *State v. Suleski*, 67 Wn.2d 45, 406 P.2d 613 (1965)).

[20] *Hopson*, 113 Wn.2d at 284 (quoting Report of Proceedings at 2-250).

[21] *Hopson*, 113 Wn.2d at 276-77 (quoting Report of Proceedings at 2-261).

¶28  To the extent there is any issue of whether there are other factors in this case which make the trial irregularity harmless, we hold there are not. Here, there is a substantial likelihood that the irregularity affected the jury's verdict.

¶29  Two eyewitnesses testified that Young shot and killed the murder victim. One of them, Curran, the assault victim, testified that Young put a gun in Curran's face, which he recognized as a revolver. He also testified that Young shot him in the back of the head and stomped and kicked him while he was on the ground. Curran further testified that, from his somewhat obstructed vantage point on the floor, he saw Young shoot toward the spot where the murder victim was lying on the floor.

¶30  Remarkably, Curran also testified that he did not realize that he had been shot in the head until he was in an ambulance, being transported to the hospital. Thus, his powers of observation were at issue. He also admitted on the stand that the initial story he told the 911 operator and the police was a lie to obscure the fact that he was involved in a drug transaction. He subsequently changed his version of events to conform to the testimony at trial. Accordingly, one or more jurors could reasonably have chosen to disbelieve Curran's testimony.

¶31  Holmes, the second eyewitness to the murder and assault, also testified that Young was the shooter. But the defense theory was that Holmes, who accepted a plea bargain in exchange for his testimony, and who was also armed that night, was the shooter. While there was other evidence to corroborate that a revolver was the weapon used during the crimes, and that the gun Holmes possessed was not a revolver, that evidence was not overwhelming. Thus, one or more jurors could have chosen to also disbelieve Holmes.

¶32  Tavares, Young's codefendant also testified, corroborating Holmes' and Curran's accounts of event leading up to and following the shooting. However, Tavares was not in the apartment when the shootings occurred. Tavares testified that he left the room moments before the shootings

occurred and was outside on the sidewalk when he heard gunshots.

¶33 The State also offered, and the court admitted over defense objection, the deposition testimony of Iesha Jones. She is Young's cousin. She testified in a perpetuation deposition that she had seen the handle of a revolver in Young's waistband earlier on the day of the shooting. However, the defense theory was that her testimony was uncertain and, possibly, coached. Further, the defense argued that the jury was deprived of the opportunity to observe her demeanor because she did not testify in person at the trial. Again, one or more jurors could reasonably have chosen to discount her testimony presented at trial by deposition.

¶34 Considering the record as a whole, and in view of the factors we have discussed, we conclude that the inherent prejudice was substantial, there was no cumulative evidence, and the limiting instruction failed to cure the error. Other relevant factors fail to overcome the prejudicial impact. There is a substantial likelihood the prejudice affected the jury verdict. Accordingly, the error was not harmless, and we reverse and remand for a new trial.

¶35 We briefly address certain other issues to the extent they may arise on remand.

## WITNESS UNAVAILABILITY

¶36 Young next argues that the trial court violated his state and federal constitutional rights to confrontation by admitting into evidence the perpetuation deposition testimony proffered by the State in its case in chief. Specifically, he argues that he was denied his rights because the State failed to demonstrate that the witness was unavailable to testify in person at trial.[22] Because we reverse on other grounds, we need not decide this issue. However, we take this opportunity to bring to the attention of counsel and the

---

[22] U.S. Const. amend. VI; Const. art. I, § 22.

court the controlling Washington case law in the event the admission of the perpetuation deposition of Jones is an issue on remand.

¶37 Testimony against a criminal defendant is admissible only if he had the opportunity and similar motive to confront the witness and develop testimony under direct, cross, or redirect examination.[23] If the witness's unavailability is due to a medical condition, this condition must make attendance at trial relatively impossible rather than merely inconvenient.[24] "A trial court's finding of unavailability is a matter within the sound discretion of the trial court and will not be reversed absent abuse of discretion."[25]

¶38 Here, the parties agreed to take a perpetuation deposition of Jones, one of the State's witnesses, because she was due to give birth at the time the trial was scheduled to begin. A little over a week into trial, on Tuesday, October 28, the State learned that she had not given birth on her due date the previous week, but was in fact in labor, in the hospital. The State also learned that she was likely to remain in the hospital, recovering from the birth, until at least the end of the week. On this record, the court found the witness was "unavailable" for purposes of the evidence rule and the constitutional provisions and admitted her deposition over defense objection.

¶39 Young argues that the State failed to show unavailability and a good faith effort to procure Jones' presence for live testimony at trial.

---

[23] *State v. Whisler*, 61 Wn. App. 126, 132, 810 P.2d 540 (1991); *Crawford v. Washington*, 541 U.S. 36, 124 S. Ct. 1354, 1374, 158 L. Ed. 2d 177 (2004) (admitting a recorded statement the defendant's wife gave to police violated the confrontation clause which requires witness unavailability and a prior opportunity for cross-examination).

[24] *Whisler*, 61 Wn. App. at 131-32; *see* ER 804 (a)(4); ER 804(a) defines "unavailability" of a witness to include situations where the witness is "unable to be present or to testify at the hearing because of death or then existing physical or mental illness or infirmity . . . ."

[25] *Whisler*, 61 Wn. App. at 137.

¶40 The leading Washington case on the issue of medical unavailability is *State v. Whisler*. There, as a matter of first impression, this court upheld a finding of unavailability of a 94-year-old witness who suffered from chronic heart disease and who was at risk for blood clots. The witness's doctor testified that traveling to testify would endanger the witness's health.[26] The court enunciated the rule that, if the witness's unavailability is due to a medical condition, the condition must make attendance at trial relatively impossible rather than merely inconvenient.[27]

¶41 In procuring the live testimony of a witness "[t]he State is not required to perform a 'futile act,' but 'if there is a possibility, albeit remote, that affirmative measures might produce the declarant, the obligation of good faith *may* demand their effectuation."[28] ER 804 indicates that a witness is unavailable if the State has been unable to procure their presence "by process or other reasonable means."[29] Ultimately, "the lengths to which the prosecution must go to produce the witness is a 'question of reasonableness.' "[30]

¶42 Here we need not decide whether the court's finding of unavailability on the day the deposition was admitted into evidence was within its considerable discretion. And we need not address the related arguments that Young makes on appeal. We leave it to the trial court the task of deciding these issues should they arise on remand.

¶43 We reverse the judgment and sentences and remand for a new trial.

---

[26] *State v. Whisler*, 61 Wn. App. 126, 130, 810 P.2d 540 (1991).

[27] *See supra*, note 24.

[28] *State v. Smith*, 148 Wn.2d 122, 132, 59 P.3d 74 (2002) (quoting *State v. Ryan*, 103 Wn.2d 165, 172, 691 P.2d 197 (1984)).

[29] ER 804(a)(5).

[30] *Smith*, 148 Wn.2d at 133 (quoting *Ohio v. Roberts*, 448 U.S. 56, 74, 100 S. Ct. 2531, 65 L. Ed. 2d 597 (1980)).

¶44 The balance of this opinion has no precedential value. Accordingly, pursuant to RCW 2.06.040, it shall not be published.

KENNEDY and APPELWICK, JJ., concur.

Reconsideration denied September 30, 2005.

Review denied at 157 Wn.2d 1011 (2006).