

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 73142-4-I |
| Respondent, | ) | |
| | ) | DIVISION ONE |
| v. | ) | |
| | ) | |
| DAVID LYNN De SPAIN, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | FILED: June 13, 2016 |
| | ) | |

BECKER, J. — During David DeSpain's[1] trial for residential burglary and second degree theft, his counsel twice moved for a mistrial following vague references to DeSpain's criminal history. The court denied both motions. DeSpain appeals, challenging the mistrial rulings, the sufficiency of the evidence supporting his theft conviction, and the basis for his exceptional sentence. We affirm.

Based on allegations that DeSpain stole jewelry and a firearm from the home of 81-year-old Margaret F., the State charged him with theft of a firearm, second degree theft, and residential burglary.

---

[1] Although the State charged the defendant as "David Lynn De Spain." Counsel for the appellant and counsel for respondent refer to appellant's last name as DeSpain on appeal. We therefore refer to the appellant as DeSpain throughout the opinion.

During voir dire, the court read the information to the jury, including the following allegation:

> And, furthermore, the Defendant has committed multiple current offenses and the Defendant's high offender score results in some of the current offenses going unpunished.

The court also told the jury: "And I would just note that the filing of the Information itself is not evidence of guilt, and is just read to you for the purpose of advising you of what the charges are."

A short time later, defense counsel moved for a mistrial, arguing that the court's references to DeSpain's high offender score and offenses going unpunished were "going to cause the jury to speculate on the nature of those convictions" and prejudice them against DeSpain based on his criminal history. The court conceded it should not have read the challenged portion of the information but denied the mistrial motion. The court noted that it told the jury the charges themselves were not evidence and that they were not to consider the charges in determining guilt or innocence. The court also stated:

> I think the jury will follow my instructions not to consider the charges themselves in determining guilt or innocence in effect. And, quite frankly, I think that the language of that aggravator is difficult to understand for any lay person
> *It would be highly—highly unlikely, in my judgment, that a jury would have understood . . . what that was about.*

(Emphasis added.) Defense counsel then told the court "we're not going to be asking for a curative instruction."

Prior to trial, the court ruled that DeSpain's 2009 theft conviction was admissible as a crime on dishonesty under ER 609. On the State's motion, the court dismissed the theft of a firearm charge.

At trial, Margaret testified that in July 2014, DeSpain performed landscaping work at her Clinton, Washington, residence. At one point, DeSpain commented on the quality of wood-working materials stacked in her garage. Margaret offered the wood to DeSpain, explaining that her late husband would have wanted it to go to someone who appreciated it.

On July 24, 2014, shortly after finishing the landscaping work, DeSpain returned to Margaret's residence to pick up the wood. She testified it took DeSpain several hours to load the wood into his truck. During that time, DeSpain used Margaret's guest bathroom.

On September 5, 2014, Margaret discovered that several pieces of her jewelry were missing from her residence. Because she had worn some of the jewelry on September 1, 2014, she believed it was stolen between September 1 and September 5. She immediately reported the theft to police. Because she suspected DeSpain, Margaret asked police if she could tell him she saw him on her surveillance cameras, even though she had no such cameras. The police approved her plan. Margaret then left DeSpain a phone message saying he was caught on her surveillance cameras and she would not give the tapes to police if he returned everything he took.

The following day, DeSpain called Margaret and apologized. He also promised to return all the jewelry. He brought her a heavy pouch the next day and apologized again for his actions. When he left, Margaret realized the pouch did not contain all the stolen jewelry. She called DeSpain and left a message saying "that the things that . . . were really worth something were not in that jewelry pouch, and now you know what I have to do."

DeSpain returned to Margaret's home the following day. He handed her a broken watch and metal chain that were not hers and said he would try to get the rest of her jewelry back. When Margaret asked how he entered her house when he took the jewelry, DeSpain demonstrated how he opened a door with a card.

Margaret testified over objection to the value of each stolen piece of jewelry. Defense counsel argued that her proposed testimony was speculation. Noting "that a person can testify about the value of his or her own property, and that any objection to that would go to the weight," the court ruled that Margaret could testify to values so long as the State laid a proper foundation.

Margaret testified that she recalled the amount she or her late husband paid for some of the jewelry. As to other pieces, she made an "educated . . . estimate" based on the amount of gold and her "knowledge of what a good piece of jewelry costs." With respect to four rings, she testified that "I more or less had some idea of what it would cost if I were to go out and do that again."

DeSpain testified and conceded that he had been convicted of theft in 2009. He testified, however, that he did not burglarize Margaret's home or take her jewelry. He conceded that she left a message accusing him of the theft and that he went to her residence to talk to her about it. He denied bringing her any jewelry. His fiancée, Elizabeth Walker, testified that she was in DeSpain's truck that evening and that he did not bring Margaret any jewelry.

In rebuttal, the prosecutor asked Margaret if DeSpain ever mentioned his 2009 theft conviction. She answered:

A. Not then. I learned that later.
Q. Okay.
A. That and several others.

Defense counsel objected and asked for a sidebar. The court responded, "I don't think it's necessary. I'm going to sustain the objection."

At the close of the evidence, defense counsel renewed his motion for mistrial:

> [DEFENSE COUNSEL]: . . . I wanted to renew the defense Motion for a Mistrial. There was testimony . . . during the State's rebuttal case regarding not just Mr. De Spain's 2009 conviction, which is obviously admissible; but also . . . a reference to other convictions which ties into the issue that led defense to make this motion in the first place. So we're renewing it on that basis.
> . . . .
> [PROSECUTOR]: Your Honor, it was objected to. No Motion to Strike was made . . . .
> THE COURT: I do not recall that there was any actual testimony about other convictions. I could be wrong about that.
> . . . .
> [DEFENSE COUNSEL]: Your Honor . . . [the prosecutor] asked [Margaret] whether or not Mr. De Spain had mentioned his

> 2009 conviction . . . . And she said, no, but I found out he has done that and then a "couple others" or something to that effect.
>
> THE COURT: . . . .
>
> . . . I do not have a specific recollection of exactly what the testimony was in that regard.
>
> It was right about that time there was an objection, which I sustained. There was no Motion to Strike any testimony that came in in that connection.
>
> So the objection was sustained. I don't find any basis for granting a mistrial under these circumstances.

Defense counsel then told the court he did not want a curative instruction "for the same reason that I have not been asking for an instruction thus far, which is that I think it would be counterproductive to Mr. De Spain." The court noted that "we do have the instruction that the conviction . . . in 2009 can only be considered for impeachment purposes, in effect. So there is that."

The jury convicted DeSpain of burglary and second degree theft. By special verdict, the jury also found that DeSpain knew or should have known that Margaret was particularly vulnerable or incapable of resistance for purposes of the burglary.

At sentencing, the court found DeSpain had offender scores of 23 on the burglary and 20 on the theft. The court concluded these scores resulted in a current offense going unpunished. Based on that conclusion and the jury's finding of particular vulnerability, the court imposed an exceptional sentence. The top of the standard range was 84 months on one count and 29 months on the other. The court imposed high-end sentences and ran them consecutively for an exceptional sentence of 113 months. DeSpain appeals.

MISTRIAL MOTIONS

We review a trial court's denial of a mistrial for abuse of discretion. State v. Young, 129 Wn. App. 468, 472-73, 119 P.3d 870 (2005), review denied, 157 Wn.2d 1011 (2006). A trial court abuses its discretion only if no reasonable judge would have reached the same conclusion. State v. Rodriguez, 146 Wn.2d 260, 269, 45 P.3d 541 (2002). We will overturn a decision denying a mistrial only if there is a substantial likelihood the error affected the verdict. Young, 129 Wn. App. at 472-73. In making that determination, we consider (1) the seriousness of the irregularity, (2) whether it involved cumulative evidence, and (3) whether it could be cured by an instruction. Young, 129 Wn. App. at 473; State v. Emery, 174 Wn.2d 741, 765, 278 P.3d 653 (2012). Applying these criteria here, we conclude the trial court did not abuse its discretion.

First, the alleged irregularities were not, either individually or collectively, particularly serious. DeSpain initially sought a mistrial based on the court's reading of the following language in the information: "the Defendant has committed multiple *current offenses* and the Defendant's high offender score results in some of the *current offenses* going unpunished." (Emphasis added.) But this provision never mentions convictions, let alone *prior* convictions. Rather, it repeatedly refers to "current offenses." We agree with the trial court that it is highly unlikely the jury interpreted this language as a reference to prior convictions. If anything, given the repeated references to "current offenses," the

jury more likely interpreted the provision as alleging that DeSpain's multiple current offenses resulted in a high offender score. This was not a serious irregularity.

The same is true of Margaret's vague reference to "several others." While her statement came closer to referencing prior convictions, the trial court correctly noted that the reference was not express and thus unlikely to generate significant prejudice. We concur and conclude that the two challenged references neither individually nor collectively amount to a serious irregularity. See, e.g., State v. Hopson, 113 Wn.2d 273, 284, 778 P.2d 1014 (1989) (statement that victim knew defendant "'three years before he went to the penitentiary the last time'" was not serious enough to materially affect the trial since there was no information concerning the nature or number of convictions); Young, 129 Wn. App. at 476 (informing jury of prior assault conviction was serious irregularity because that conviction and current offenses were for violent offenses); State v. Condon, 72 Wn. App. 638, 865 P.2d 521 (1993) (ambiguous statement about defendant having been in jail was not so serious as to warrant a mistrial), review denied, 123 Wn.2d 1031 (1994).

Second, because the court had already admitted evidence of DeSpain's 2009 theft conviction, any implied reference to additional unnamed prior convictions was cumulative.

Finally, the challenged references were oblique at best and could easily have been cured by an instruction. Defense counsel expressly decided, however, not to seek a curative instruction. That decision strongly indicates that counsel thought the irregularities were not particularly prejudicial and that an instruction would likely do more harm than good.

The trial court did not abuse its discretion in denying DeSpain's motions for mistrial.

## SUFFICIENCY OF THE EVIDENCE

DeSpain next asserts there was insufficient evidence supporting the value element of second degree theft. He contends Margaret's testimony regarding the value of her jewelry was too speculative to support a finding, beyond a reasonable doubt, that he stole property worth at least $750. We disagree.

Evidence is sufficient if, viewed in light most favorable to the prosecution, it permits any rational trier of fact to find the elements of the crime beyond a reasonable doubt. State v. Salinas, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). When reviewing a challenge to the sufficiency of the evidence, all reasonable inferences from the evidence are drawn in favor of the State and interpreted most strongly against the defendant. Salinas, 119 Wn.2d at 201.

An essential element of second degree theft is that the value of the property stolen exceeded $750. RCW 9A.56.040(1)(a). In this context, "value" is the "market value" of the property at the time and in the approximate area of the

criminal act. RCW 9A.56.010(21)(a). Market value is an objective standard and consists of "'the price which a well-informed buyer would pay to a well-informed seller, where neither is obliged to enter into the transaction.'" State v. Kleist, 126 Wn.2d 432, 435, 895 P.2d 398 (1995), quoting State v. Clark, 13 Wn. App. 782, 787, 537 P.2d 820 (1975). An owner of property may testify to the property's value "'whether he [or she] is generally familiar with such values or not.'" State v. Hammond, 6 Wn. App. 459, 461, 493 P.2d 1249 (1972), quoting 3 JOHN HENRY WIGMORE, EVIDENCE IN TRIALS AT COMMON LAW § 716, at 56 (James H. Chadbourn rev. ed. 1970). As the Hammond court noted,

> the general rule requiring that a proper foundation be laid, showing the witness to have knowledge upon the subject before he can qualify to testify as to market value, does not apply to a party who is testifying to the value of property which he owns. The owner of property is presumed to be familiar with its value by reason of inquiries, comparisons, purchases and sales.

Hammond, 6 Wn. App. at 461 (emphasis added). In addition, the Hammond court noted that while market and replacement value are different, replacement value "is a recognized factor to be considered in determining market value." Hammond, 6 Wn. App. at 463.

Here, Margaret testified to replacement values for four rings, stating "I more or less had some idea of what it would cost if I were to go out and do that again." She valued three of the rings at $300 apiece and a fourth at $175. She testified that she had "some basic knowledge of what a good piece of jewelry costs. Over the years I've learned." She also indicated awareness of the price of

gold and the original purchase price of some items. She valued a necklace with a sapphire stone at $375, another gold necklace with a two-peso piece at $250, gold earrings with turquoise stones at $75, plain gold hoop earrings at $100, a gold tennis bracelet with diamonds at $150, and a silver chain with a turquoise stone at $75. Viewed in a light most favorable to the State, Margaret's testimony would permit a rational trier of fact to find the value element of second degree theft beyond a reasonable doubt.

## SPECIAL VERDICT / EXCEPTIONAL SENTENCE

DeSpain next contends the State did not prove beyond a reasonable doubt that Margaret was particularly vulnerable, thus warranting an exceptional sentence. Again, we disagree.

The court instructed the jury to determine "whether the defendant knew or should have known that the victim was particularly vulnerable or incapable of resistance." The instruction defined "particularly vulnerable" as being "more vulnerable to the commission of the crime than the typical victim of Residential Burglary. The victim's vulnerability must also be a substantial factor in the commission of the crime." In this case, Margaret was an 81-year-old widow living alone. DeSpain knew this from working at her residence before the burglary. He understood that she was particularly vulnerable, telling her after the crime that "'for your own protection, *living here alone*, I will show you how easy it is to get into your house.'" (Emphasis added.) Viewing the evidence in a light most

favorable to the State, a rational trier of fact could conclude beyond a reasonable doubt that Margaret's advanced age and living situation made her particularly vulnerable. See State v. Hawkins, 53 Wn. App. 598, 606, 769 P.2d 856 (particular vulnerability was shown by victim's advanced age and fact that she lived alone), review denied, 113 Wn.2d 1004 (1989); State v. Jones, 130 Wn.2d 302, 312, 922 P.2d 806 (1996) (upholding exceptional sentence based on victim's vulnerability due to advanced age of 77); State v. Schimelpfenig, 128 Wn. App. 224, 115 P.3d 338 (2005) (advanced age and living alone may make a victim particularly vulnerable).

Even if we were to conclude that Margaret was not particularly vulnerable, we would still uphold the exceptional sentence based on the unchallenged finding that DeSpain's high offender score results in current offenses going unpunished. RCW 9.94A.535(2)(c). The court in this case stated that "I would have imposed this sentence if only one of the grounds . . . that I outlined here was valid." When it is clear the sentencing court would impose the same exceptional sentence based on any one of several aggravating factors, an error regarding one of the factors is inconsequential and the exceptional sentence may be upheld. State v. Jackson, 150 Wn.2d 251, 276, 76 P.3d 217 (2003).

STATEMENT OF ADDITIONAL GROUNDS

DeSpain has filed a pro se Statement of Additional Grounds for Review. Most of his arguments either echo his counsel's and fail for the same reasons, or

- 12 -

request adoption of a "new rule" relating to ER 609 that would modify longstanding jurisprudence and must therefore be addressed to our State Supreme Court. State v. Gore, 101 Wn.2d 481, 486-87, 681 P.2d 227 (1984) (decisions of state Supreme Court are binding on lower courts).

DeSpain also contends the prosecutor committed misconduct when he stated in closing argument:

> So the defense would have us—would need you to believe that Margaret [ ] made this up . . . out of the blue.
> Why? Why? Why would Margaret [ ] make this up?
>
> . . . .
>
> It's pretty simple. You either believe [Margaret] or you believe the Defendant. There's not a whole lot more I can . . . beat the drum on this case about.

DeSpain contends these remarks improperly told the jury "that in order to acquit, the defendant, it has to not believe the alleged victim."

It is well settled that a prosecutor may not tell a jury that in order to acquit it must conclude the State's witnesses are lying. State v. Fleming, 83 Wn. App. 209, 214, 921 P.2d 1076 (1996), review denied, 131 Wn.2d 1018 (1997). Here, however, the prosecutor did not expressly state that *acquittal* hinged on disbelieving Margaret's testimony. See State v. Rafay, 168 Wn. App. 734, 837, 285 P.3d 83 (2012) (no misconduct where remarks "did not expressly contrast an acquittal . . . with a jury determination that the State's witness were lying" and "merely highlighted the obvious fact that the two accounts were fundamentally and obviously different") (emphasis omitted), review denied, 176 Wn.2d 1023

(2013), cert. denied, 134 S. Ct. 170 (2013). Moreover, the prosecutor's statement that "you either believe [Margaret] or you believe the Defendant" arguably fell within the rule permitting a prosecutor to state, in an appropriate case, that the jury necessarily must choose between two different versions of what happened. State v. Wright, 76 Wn. App. 811, 825, 888 P.2d 1214, review denied, 127 Wn.2d 1010 (1995); Rafay, 168 Wn. App. at 837.

In any event, because the defense did not object to the remarks, any error was waived "unless the prosecutor's misconduct was so flagrant and ill-intentioned that an instruction could not have cured the resulting prejudice." Emery, 174 Wn.2d at 760-61. The prosecutor's brief and indirect comments were neither flagrant nor incurable.

Affirmed.

Becker, J.

Appelwick, J.

Spearman, J.