# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 58007-1-II |
| Respondent, | |
| v. | |
| SCOTT ALLAN THORNTON, | UNPUBLISHED OPINION |
| Appellant. | |

GLASGOW, J.—Scott Thornton was convicted of vehicular assault, failure to remain at an injury accident (hit-and-run), and first degree attempted theft for an incident where Thornton drove his truck over Jillian Lapell after she caught him trying to steal a trailer from her home. Thornton asserts that at trial, a police detective and a police officer made three comments while testifying that improperly referenced his criminal history. In all three instances, the trial court sustained Thornton's objection and, in two instances, the trial court instructed the jury to disregard the comments. Thornton moved for mistrial after the second and third instances, and the trial court denied each motion. The trial court sentenced Thornton to an exceptional sentence above the standard range. Thornton appeals his convictions and sentence.

Thornton argues that the comments he asserts were references to his criminal history, were trial irregularities that denied him a fair trial. He contends that the trial court erred by denying his motions for mistrial. Thornton also argues that we should remand for the trial court to enter written findings of fact and conclusions of law to support his exceptional sentence and to strike the $500

crime victim penalty assessment. Thornton has also filed a statement of additional grounds for review (SAG).

We hold that the trial court did not abuse its discretion when it denied Thornton's motion for a mistrial. We affirm Thornton's convictions, but we remand to the trial court to enter written findings of fact and conclusions of law to support the exceptional sentence and to strike the $500 crime victim penalty assessment.

FACTS

I. BACKGROUND

Early one morning, Jillian Lapell left her house through the front door and saw a white pickup truck backed up near her new travel trailer, which was parked in front of her house. Thornton was in between the truck and the travel trailer. Lapell thought Thornton looked like he had chains and was trying to hook up or unhook the trailer.

Lapell asked Thornton what he was doing. He stood up and said the trailer was being repossessed. Lapell then walked toward the front of Thornton's truck to take a picture of his license plate so she could report him to the police, stopping near the passenger side of the truck but in front of it.

Thornton yelled, "No" and began to drive the truck. 5 Verbatim Rep. of Proc. (VRP) at 543. Thornton drove to his left, away from Lapell, while Lapell appears to have run alongside the front passenger side of the truck. Thornton hit Lapell with his truck. He first hit her hip while she was standing, and then the wheels of the truck went over her body after she was on the ground. Lapell's pelvis was crushed and her right femur was broken. After hitting Lapell, Thornton drove over a curb and hit a mailbox. He then accelerated and drove away.

Lapell had surgeries to repair her pelvis and femur. Her right leg is now shorter than her left leg, and she will likely have a long-term physical disability.

## II. INVESTIGATION

The Tacoma Police Department responded to the scene and canvassed the neighboring houses for security cameras that might have captured the incident. Detective Robison obtained a home security camera video of the incident from a house on the street. Detective Robison also obtained video footage of the same white truck at a nearby car wash. Robison used the video to create a law enforcement bulletin with a picture of the white truck. Puyallup Police Detective Tungsvik reached out to Detective Robison and identified the vehicle as belonging to Thornton based on his prior contact with Thornton. Detective Robison then provided Lapell with a lineup of photos, and Lapell identified Thornton as the driver who hit her.

Police officers arrested Thornton. Officers impounded Thornton's truck, seized his cell phone, and obtained search warrants for both. Detective Robison found a criminal traffic citation inside the truck with Thornton's name and address on it.

A detective performed a forensic extraction of Thornton's cell phone and obtained data from his cell phone provider. Thornton's cell phone showed he made several phone calls and sent messages shortly after the incident asking a friend to pick him up from the car wash.

The State charged Thornton with vehicular assault, failure to remain at an injury accident (hit-and-run), first degree attempted theft, and first degree assault. The case proceeded to a jury trial.

III. TRIAL AND ALLEGED IRREGULARITIES

A.      Testimony That the Police Detective Was Very Familiar with Thornton's Truck

Detective Robison, who was an experienced detective, testified that in response to his law enforcement bulletin seeking help identifying the owner of the white truck, Detective Tungsvik told him Tungsvik was "very familiar" with Thornton's truck. 3 VRP at 313. Thornton interrupted with an objection, which the trial court sustained.

The State then continued to question Detective Robison. Thornton did not request any curative instruction and the trial court did not instruct the jury to disregard Robison's statement.

B.      Testimony That the Detective Found a Criminal Citation in Thornton's Truck

Detective Robison also testified that he found a criminal citation from the City of Puyallup containing Thornton's name and address in the white truck. Thornton objected. Outside the presence of the jury, Thornton explained that the mention of a criminal citation violated ER 404 because it suggested a prior crime, and he asked for a mistrial.

The State responded that the citation was relevant because, in a situation where Thornton may have allowed other people to also drive the truck, the citation showed Thornton himself had been driving the truck two weeks prior to the incident. Although the State had attempted to redact all references to crime, it failed to redact a reference to "refer to prosecutor" and "CT,' meaning criminal traffic." 3 VRP at 367. The trial court remarked that although someone with experience in law enforcement might connect these references to a crime, a lay person would not. The State agreed to further redact the exhibit to black out these references, conceding that the criminal nature of the citation should not be before the jury.

4

In response to the objection to the testimony and motion for mistrial, the trial court explained:

> I'm going to deny the motion for a mistrial.
>         . . . .
> I don't think that this merits a mistrial, particularly when, as here, we don't even know what the underlying criminal offense was, if it was something very similar in nature such as a hit-and-run or possessing stolen property or an assault.
>
>         It's not to say that there is no prejudice or no unfair prejudice that attaches to its identity as a criminal citation in general, but it is to say that it's not nearly as prejudicial, I suppose, as it could be.
>
>         And I don't believe, in any event, it merits a mistrial when an instruction to disregard is warranted, and I trust the jury can follow the instructions of the Court.

3 VRP at 368-69. The trial court then decided that the citation was admissible with the additional redactions to remove any reference to a crime. Finally, the trial court instructed the jury "to disregard Detective Robison's last answer to the last question." 3 VRP at 372.

C.      Testimony About a Felony Warrant for Thornton

City of Puyallup Police Detective Kaleb Johnson testified he was looking for Thornton's truck because he "knew [Thornton] to have a felony warrant." 5 VRP at 647. Thornton's counsel objected and moved to strike. The trial court then told the jury to disregard the witness's answer. Outside the jury's presence, Thornton again asked for a mistrial. The State explained that the warrant Johnson was talking about was the warrant for Thornton's arrest for the crimes at issue in this case. The trial court responded, "What I do think is appropriate . . . Mr. Oliver, if you want the jury to learn that this was a warrant that was outstanding not in connection with any other matters, it just has to do with this, . . . at your option, you should be allowed to present that." 5

5

VRP at 651. Thornton declined, saying, "I'd rather not ring the bell again." 5 VRP at 652. The trial court then denied the motion for mistrial.

In closing, Thornton conceded that he was the person driving the truck during the incident, but he argued that he was not trying to steal the trailer. And Thornton asserted, based on the video, that he hit and ran over Lapell accidentally.

D.      Verdict and Sentence

The jury found Thornton not guilty of first degree assault, but it convicted him of the remaining charges. The jury also found aggravating factors for the vehicular assault, including that Thornton was operating a vehicle recklessly and with disregard for the safety of others, and the injuries Lapell suffered exceeded the level of injury necessary to support the conviction. The trial court imposed an exceptional sentence above the standard range based on the aggravating factors that the jury found, but it did not enter written findings of fact to support the exceptional sentence.

Thornton appeals his convictions and sentence.

ANALYSIS

I. MOTIONS FOR MISTRIAL

Thornton argues that "police officer testimony referencing Scott Thornton's criminal history denied him the right to a fair trial and the court should have granted his motion for a mistrial." Br. of Appellant at 11 (capitalization omitted). Specifically, he challenges three improper statements: Detective Robison's testimony that Detective Tungsvik was "'very familiar'" with Thornton's truck, Detective Robison's testimony that he found a criminal citation in Thornton's

truck, and Officer Johnson's testimony that he was looking for Thornton's truck because he knew Thornton to have a felony warrant. *Id.* at 12. We disagree.

A.        Standard of Review

We apply the abuse of discretion standard when reviewing a trial court's denial of a motion for mistrial. *State v. Hopson*, 113 Wn.2d 273, 284, 778 P.2d 1014 (1989). We will find abuse of discretion only "'when no reasonable judge would have reached the same conclusion.'" *State v. Emery*, 174 Wn.2d 741, 765, 278 P.3d 653 (2012) (internal quotation marks omitted) (quoting *Hopson*, 113 Wn.2d at 284). In addition, a trial court's denial of a mistrial motion will be overturned only when there is a substantial likelihood that the error affected the jury's verdict. *State v. Garcia*, 177 Wn. App. 769, 776, 313 P.3d 422 (2013).

B.        Irregularities That Can Lead to Mistrial

A trial court should order a mistrial "'only when the defendant has been so prejudiced that nothing short of a new trial can insure that the defendant will be tried fairly.'" *Id.* (internal quotation marks omitted) (quoting *State v. Rodriguez*, 146 Wn.2d 260, 270, 45 P.3d 541 (2002)). In determining whether a trial court abused its discretion in denying a motion for a mistrial, we examine (1) the seriousness of the claimed irregularity, (2) whether the irregularity was cumulative of other properly admitted evidence, and (3) whether the irregularity could be cured by an instruction. *State v. Wade*, 186 Wn. App. 749, 773, 346 P.3d 838 (2015); *State v. Escalona*, 49 Wn. App. 251, 254, 742 P.2d 190 (1987).

1.        Seriousness of the irregularity

An irregularity is particularly serious where a jury learns of a prior conviction where both the charges at issue and the prior conviction share the characteristic of being violent felonies. *See*

*State v. Young*, 129 Wn. App. 468, 476, 119 P.3d 870 (2005). In *Young*, the court granted a mistrial where the jury venire learned of the defendant's prior second degree assault conviction and the defendant was accused of killing a person with a deadly weapon. *Id.* at 470-71. The mistaken disclosure was "a serious irregularity that [was] inherently prejudicial," where the two charges at trial were "also violent felonies—murder and first degree assault." *Id.* at 476.

Where the disclosed prior conviction and the charges at trial are for the same crime and same method of committing the crime, the seriousness of the improper disclosure weighs even more heavily in favor of a mistrial. *See Escalona*, 49 Wn. App. at 255-56. In *Escalona*, a witness statement that the defendant "already has a record and had stabbed someone" was "extremely serious," and "'inherently prejudicial'" where the defendant "was charged with second degree assault while armed with a deadly weapon, a knife." *Id.* at 252, 255-56 (quoting *State v. Miles*, 73 Wn.2d 67, 71, 436 P.2d 198 (1968)). In contrast, where disclosed prior criminal behavior was a misdemeanor drug violation and the charges at trial involved murder, the improper disclosure was less serious and did not warrant a mistrial. *Wade*, 186 Wn. App. at 775. Also, where the disclosure to the jury involved "no information concerning the nature or number of prior convictions," it was less serious and did not warrant a mistrial. *Hopson*, 113 Wn.2d at 286.

Where a disclosure of a prior act violates a motion in limine, this increases the seriousness and supports a mistrial. *State v. Gamble*, 168 Wn.2d 161, 178, 225 P.3d 973 (2010) ("[A] violation of a pretrial order is a serious irregularity."); *see Escalona*, 49 Wn. App. at 252-53 (granting mistrial where pretrial motion in limine to exclude any mention or reference to defendant's prior conviction was violated by a witness's statement that "[defendant] already has a record and had stabbed someone").

Where the person disclosing the defendant's prior act is a professional witness, like a law enforcement officer, this increases the seriousness of the improper disclosure. *Gamble*, 168 Wn.2d at 178. Moreover, "[a]n intentional introduction of inadmissible evidence relating to criminal history is more serious than an unintentional interjection of inadmissible testimony." *Id.* at 178. Reiteration of a comment may indicate deliberateness. *See, e.g., State v. Taylor*, 60 Wn.2d 32, 36, 371 P.2d 617 (1962).

Finally, when evaluating seriousness, the court may also consider the overall strength of the State's case. For example, in *Escalona,* reference to Escalona's prior stabbing of a different victim was serious in part because the State's overall case was weak. *Escalona,* 49 Wn. App. at 256.

### 2. Remaining factors

Where the information revealed by an irregularity is cumulative of properly admitted evidence, this factor weighs against a mistrial. *See e.g., Hopson*, 113 Wn.2d at 286. Where the court gives the jury a curative instruction, this factor weighs heavily against a mistrial, in part because we presume the jury follows instructions from the trial court. *See id.* at 287; *Gamble*, 168 Wn.2d at 178. But the immediacy of the instruction matters and delay in giving the instruction can impair its efficacy, especially where the jury is permitted to consider the evidence overnight without being instructed to disregard it. *State v. Gogo*, 29 Wn. App. 2d 107, 116, 540 P.3d 150 (2023). Moreover, an attempt at an instruction "is not curative where it 'fail[s] to inform the jury that the . . . comment was improper and not to be considered.'" *Id.* (alterations in original) (quoting *State v. Davenport*, 100 Wn.2d 757, 764, 675 P.2d 1213 (1984)). And some evidence is so inherently prejudicial that an instruction cannot cure the prejudice. *Hopson*, 113 Wn.2d at 286.

C.    The Trial Court Did Not Err When It Denied Thornton's Motions for Mistrial

Detective Robison's testimony that Detective Tungsvik was "very familiar" with Thornton's truck was not in itself serious and could have been cured by an instruction to disregard had Thornton requested one. 3 VRP at 313. This testimony revealed "no information concerning the nature or number of prior convictions" or even that Thornton had any prior convictions at all. *Hopson*, 113 Wn.2d at 286. Upon further reflection, the trial court noted that this statement was not improper. Even assuming it was improper, although Detective Robison was an experienced professional witness, there was no indication that Robison knew the testimony was improper and gave it anyway. Thus, the testimony did not amount to a serious irregularity: it does not appear the testimony was intentionally improper, and any prejudice could have been cured, outweighing the extent of the testifying detective's experience and the lack of properly admitted cumulative evidence.

Detective Robison's testimony that he found a criminal citation in Thornton's truck was somewhat serious because he was an experienced professional witness and a criminal traffic citation could suggest to the jury that Thornton had driven recklessly in the past. But the similarity between the prior act and the charges at issue in the trial does not rise to the level of similarity in *Escalona,* where both crimes involved assault with a knife, or in *Young*, where the prior acts and charges at trial were all violent felonies. *Escalona*, 49 Wn. App. at 252; *Young*, 129 Wn. App. at 476. The testimony here did not reveal any specific prior conviction, only a vague citation, and the cited act was not obviously similar to the charges at trial. A redacted copy of the citation was admitted as exhibit 35 because it connected Thornton to the truck, so the jury was legitimately aware that Thornton had received a traffic citation. In addition, the trial court told the jury to ignore

the detective's statement that it was a criminal citation. On balance, considering all of the relevant factors, we conclude that the trial court did not err when it denied the motion for mistrial based on this testimony combined with the prior statement that Tungsvik was very familiar with Thornton's truck.

Officer Johnson's testimony that he was looking for Thornton's truck because he knew Thornton to have a felony warrant was not improper in context, and the trial court offered Thornton an opportunity to clarify to the jury that the felony warrant was issued in connection with the investigation for this case. Thus, the trial court offered to make clear that this comment did not refer to any prior crime. Such a clarification could have decreased the possible prejudice against Thornton. However, Thornton chose not to clarify that the felony warrant was related to this case at trial because he did not want to "ring the bell again" in the minds of the jury. 5 VRP at 652. And even though Officer Johnson's testimony about his awareness of Thornton's felony warrant was not improper, the trial court immediately told the jury to disregard it. Thus, the trial court did not abuse its discretion when it denied a mistrial based on this testimony.

The second motion for mistrial occurred after all three alleged irregularities occurred. Thornton emphasizes that the combined effect of the irregularities was prejudicial and the trial court should have granted the final request for mistrial based on the cumulative effect of all three instances.

Cumulative error may warrant reversal, even if each error standing alone would otherwise be considered harmless. *State v. Weber*, 159 Wn.2d 252, 279, 149 P.3d 646 (2006). But even considering the cumulative effect of all three alleged irregularities, the trial court did not abuse its discretion in denying a mistrial. The combined nature of the testimony at issue was not serious.

11

The trial court immediately issued curative instructions regarding the second and third alleged irregularities, and Thornton did not request a curative instruction regarding the first irregularity. Even considering the combined effect, the trial court did not err when denying a mistrial based on the cumulative nature of the testimony discussed above.

Moreover, there was not a substantial likelihood that the alleged irregularities would have affected the jury's verdict. *Garcia*, 177 Wn. App. at 776. In closing, Thornton conceded he was the driver of the truck and argued that the injuries to Lapell were accidental. But the members of the jury were able to view a video of the incident, so they could evaluate for themselves what happened. None of the alleged irregularities specifically identified any similar prior crimes, and curative instructions were given for two instances of the challenged testimony, minimizing their impact. In addition, Thornton was given an opportunity to explain to the jury that the mention of a felony warrant was related to the instant case. Under these circumstances, there is not a substantial likelihood that the verdict was affected.

In sum, the trial court did not abuse its discretion when it denied the motions for mistrial.

## II. REMAND TO ENTER FINDINGS OF FACT AND CONCLUSIONS OF LAW

Thornton asks that we remand this matter to the trial court to enter the required written findings of fact and conclusions of law to support his exceptional sentence. Whenever a sentence outside the standard sentencing range is imposed, the court shall set forth the reasons for its decision in written findings and conclusions. RCW 9.94A.535. The remedy for a trial court's failure to enter written findings and conclusions is to remand for the trial court to do so. *State v. Friedlund*, 182 Wn.2d 388, 395, 341 P.3d 280 (2015). The State concedes that remand for this

purpose is appropriate. We accept the State's concession and accordingly remand for the trial court to enter written findings of fact and conclusions of law to support the exceptional sentence.

## III. CRIME VICTIM PENALTY ASSESSMENT

Thornton asks that we also remand to strike the crime victim penalty assessment. The $500 assessment was mandatory at the time of Thornton's sentencing in February 2023. *See* former RCW 7.68.035(1)(a) (2018), *amended by* LAWS OF 2023, ch. 449, § 1(4). However, the legislature has since eliminated the assessment for indigent defendants. RCW 7.68.035(4). The State concedes that remand for purposes of striking the assessment from Thornton's judgment and sentence is appropriate. We accept the State's concession and accordingly remand for the trial court to strike the $500 crime victim penalty assessment from Thornton's judgment and sentence.

## IV. STATEMENT OF ADDITIONAL GROUNDS

Thornton raises numerous arguments in his SAG that depend on matters outside the record. He asserts a police officer searched materials not authorized in a search warrant, and Thornton requests evidence about what the officer looked at; he contends a juror was possibly related to this court's clerk; and he argues a prosecutor rearraigned Thornton after he had bailed out with the improper motive of keeping him in custody. Under *State v. McFarland*, 127 Wn.2d 322, 335, 899 P.2d 1251 (1995), "[i]f a defendant wishes to raise issues on appeal that require evidence or facts not in the existing trial record, the appropriate means of doing so is through a personal restraint petition." We decline to address these arguments because they rely on evidence outside the record in this appeal. Additionally, the argument that the prosecutor rearraigned Thornton after he bailed out with the improper motive of keeping him in custody is moot because bail decisions become

moot postconviction absent an issue of substantial public import. *State v. Heng*, 22 Wn. App. 2d 717, 738-39, 512 P.3d 942 (2022), *aff'd*, 2 Wn.3d 384, 539 P.3d 13 (2023).

Thornton also asserts that he was referred to as "the defendant" by various witnesses and the judge during trial and this prejudiced him before the jury. We decline to address this issue because he has not provided sufficient explanation and fails to inform us as to how this was improper or prejudicial under RAP 10.10(c), where it was clear to the jury that he was the defendant. Moreover, the issues Thornton raises regarding the testimony of Detective Robison and Detective Johnson are duplicative of those briefed by counsel.

Finally, Thornton argues the trial court did not allow one of his witnesses, Trevor Dickinson, to testify based on a motion filed by the State because Dickinson was present in the courtroom during testimony. Thornton argues the court should also have excluded Detective Darrin Reda as a witness for the same reason. Thornton is mistaken that Dickinson was excluded as a witness—although the State did file a motion to exclude Dickinson as a witness for violating the court's order for exclusion of witnesses from the courtroom, the State ultimately withdrew its request that the court prohibit Dickinson's testimony. Furthermore, the detective would have had difficulty modifying his testimony to align with or respond to prior witnesses. Reda's testimony was about the forensic examination he performed on Thornton's cell phone. No other witnesses testified about the content of Thornton's cell phone, and any testimony given about the content on the phone could be verified, making it highly unlikely Reda could tailor his testimony to be consistent with other testimony he heard. Thus, the trial court's decision not to exclude Reda as a witness does not warrant reversal.

No. 58007-1-II

## CONCLUSION

We affirm Thornton's convictions. We remand to the trial court to enter the required findings of fact and conclusions of law to justify the exceptional sentence and to strike the crime victim penalty assessment from Thornton's judgment and sentence.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

GLASGOW, J.

We concur:

VELJACIC, A.C.J.

PRICE, J.

15