FILED
COURT OF APPEALS
DIVISION II

2013 NOV 13 AM 11: 13

STATE OF WASHINGTON

BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 42890-3-II |
| Respondent, | |
| v. | |
| JOHNNY MICHAEL GARCIA, | PUBLISHED OPINION |
| Appellant. | |

MAXA, J. — Johnny Garcia appeals his convictions for first degree assault, first degree unlawful possession of a firearm, and unlawful possession of a controlled substance. At trial, he stipulated that he had committed a "serious offense" for purposes of the unlawful possession of a firearm charge to prevent the State from introducing evidence of his prior first degree robbery conviction. However, the jury instructions inadvertently included an instruction stating that the jury had to find that Garcia committed first degree robbery in order to convict on the first degree unlawful possession of a firearm charge. The trial court replaced the erroneous instruction and instructed the jury to disregard it. The trial court then denied Garcia's motion for a mistrial. On appeal, Garcia argues that (1) the trial court abused its discretion in denying his mistrial motion, (2) the trial court improperly admitted "gang" evidence and the cumulative effect of this evidence and the erroneous instruction deprived him of his right to a fair trial, and (3) on remand we should appoint different counsel because trial counsel was ineffective.

We hold that the trial court did not abuse its discretion when it denied Garcia's mistrial motion because the jury's temporary exposure to the improper instruction was not such a serious trial irregularity that it could not be cured by an instruction to disregard. We also hold that Garcia's gang evidence and cumulative error claims fail because he failed to preserve for review his challenge to the gang evidence. And because we do not remand, we do not address Garcia's request to appoint new trial counsel. Accordingly, we affirm Garcia's convictions.

FACTS

On April 23, 2011, Mark McCloud, his cousin Tara McCloud Shanta, and his friend Phillip Noel were in the garage behind a friend's house. Garcia arrived at the garage and argued with Shanta. McCloud and Garcia also began to argue. Garcia shot McCloud in the abdomen and arm, and then fled.

Shortly after the shooting, Noel identified Garcia from a photo montage. Tacoma Police Department officers later located Garcia and arrested him. During a search incident to arrest, the officers discovered methamphetamine in Garcia's pants pocket. The State charged Garcia with first degree assault under RCW 9A.36.011(1)(a), first degree unlawful possession of a firearm under RCW 9.41.040(1)(a), and unlawful possession of methamphetamine under RCW 69.50.4013(1).

At trial, part of the State's burden on the firearm charge was to prove that Garcia previously had been convicted of a "serious offense." To satisfy this burden, the State sought to admit Garcia's judgment and sentence for a prior first degree robbery conviction. Garcia objected and offered to stipulate that he had committed a serious offense without revealing that the offense was first degree robbery. The trial court accepted the stipulation and instructed the jury:

2

> This is a stipulation of the parties. The parties have agreed that the following evidence will be presented to you: As of April 23rd, 2011, the defendant, Johnny Michael Garcia, had previously been convicted of a crime that is a serious offense and that makes him ineligible to possess a firearm as is required to be proven beyond a reasonable doubt by the State of Washington as an element of Count II, Unlawful Possession of a Firearm in the First Degree. This is evidence that you will evaluate and weigh with all the other evidence.

7 Report of Proceedings (RP) at 62-63.

During trial, three witnesses mentioned the word "gang." A Puyallup Tribal Police Department officer said that when he was dispatched in response to Noel's 911 call, he "knew that there was a garage behind the house at 2218 East 32nd that's a known gang hangout." 1 RP at 77. A Tacoma Police Department officer who arrived at the scene of Garcia's arrest testified that he was a part of "[t]he gang unit." 4 RP at 7. Another Tacoma Police Department officer testified that on the evening of Garcia's arrest, he "was requested to meet with our gang unit officers regarding the operation they were involved with." 6 RP at 63. And during closing argument, the State told the jury that Garcia "pull[ed] out a gun and d[id] the gangster shoot." 8 RP at 9.

Before closing argument, the trial court asked counsel if there were any objections to the jury instructions. Neither the State nor defense counsel objected to the proposed instructions, and the trial court distributed copies of its instructions to the jury. The trial court then read the instructions. Instruction 20, the "to convict" instruction for the first degree unlawful possession of a firearm charge, read as follows:

> To convict the defendant of the crime of unlawful possession of a firearm in the first degree, as charged in Count II, each of the following elements of the crime must be proved beyond a reasonable doubt:
> (1) That on or about the 23rd day of April, 2011, the defendant knowingly had a firearm in his possession or control;
> (2) *That the defendant had previously been convicted of Robbery in the First Degree,* a serious offense; and

(3) That the possession or control of the firearm occurred in the State of Washington.

Clerk's Papers (CP) at 202 (emphasis added). Apparently neither the trial court nor counsel had noticed that the instruction specifically referenced first degree robbery as a "serious offense" despite Garcia's stipulation.[1]

During closing argument, the State projected an image of instruction 20 for the jury to view. Despite what the instruction stated, the State did not mention robbery and told the jury that it needed to find that Garcia had "been convicted of a prior serious offense." 8 RP at 16.

After finishing closing argument, the State informed the trial court that instruction 20 was incorrect and asked that the court amend it to state "a serious offense" instead of "Robbery in the First Degree." 8 RP at 21-22. The State also told the trial court that it had noticed the incorrect instruction and had tried to "sanitize [the mistake] in the midst of the argument by using the other statutory language and then pulling it off the overhead as quickly as I could without looking too obvious about it." 8 RP at 22. Defense counsel said that he "didn't catch this either." 8 RP at 22. The parties agreed to replace the jury's copy of instruction 20 with the proper instruction.

The trial court also determined that it had read the incorrect version of this instruction to the jury. Accordingly, the parties agreed that in addition to providing the jury with a corrected copy of the instruction, the trial court would read the proper instruction to the jury and inform the jury that it "misspoke" the first time it read the instruction. 8 RP at 25.

---

[1] The State explained that the version of instruction 20 submitted to the trial court had been drafted before Garcia stipulated that he had been convicted of a serious offense. The State did not amend the instruction after the trial court accepted the stipulation, and defense counsel did not object to the instruction as the State originally submitted it.

4

When the trial court collected the incorrect copies of instruction 20 from the jury, it noticed that one juror had placed a star next to "Robbery" and another juror had underlined "Robbery" and placed a question mark next to that portion of the instruction. Garcia then moved for a mistrial. Garcia noted that the State also had projected the incorrect instruction "for several minutes," to which the State responded,

> I don't know that we actually had several minutes. Basically, I looked up, saw the error, [and] as soon as I saw that I tried to engage the jury with eye contact to divert them away from it and tried as gracefully as possible to remove that from the overhead. But it certainly was on the overhead long enough to look up and see the robbery words on the instruction.

8 RP at 29-30. The trial court denied the mistrial motion.

The trial court gave the jury corrected copies of instruction 20, reread the correct version of the instruction to the jury, and stated,

> During closing argument, the Court realized that instruction 20 concerning Count II, the charge of Unlawful Possession of a Firearm in the First Degree, was the wrong instruction for this case. You have now been given the correct instruction 20 concerning Count II. You should disregard the previous instruction 20.

8 RP at 33.

The jury convicted Garcia on all counts, and he appeals.

## ANALYSIS

I.   MISTRIAL MOTION

Garcia stipulated that he had been convicted of a "serious offense" in order to prevent the jury from hearing evidence that he had been convicted of first degree robbery. Nevertheless, the jury temporarily was exposed to an instruction stating that in order to convict, it had to find that Garcia was convicted of first degree robbery. Garcia argues that the trial court abused its discretion in denying his mistrial motion based on this improper instruction. We disagree.

5

Temporarily exposing the jury to an improper jury instruction was not such a serious irregularity that it could not be cured with a limiting instruction, and the trial court instructed the jury to disregard the instruction because it was the wrong instruction for this case.

## A. Standard of Review

We review a trial court's denial of a mistrial for abuse of discretion. *State v. Emery*, 174 Wn.2d 741, 765, 278 P.3d 653 (2012). Our Supreme Court has stated that abuse of discretion will be found for a denial of a mistrial only when " 'no reasonable judge would have reached the same conclusion.' " *Emery*, 174 Wn.2d at 765 (internal quotation marks omitted) (quoting *State v. Hopson*, 113 Wn.2d 273, 284, 778 P.2d 1014 (1989)). A trial court's denial of a mistrial motion will be overturned only when there is a substantial likelihood that the error affected the jury's verdict. *State v. Rodriguez*, 146 Wn.2d 260, 269-70, 45 P.3d 541 (2002). A mistrial should be ordered " 'only when the defendant has been so prejudiced that nothing short of a new trial can insure that the defendant will be tried fairly.' " *Rodriguez*, 146 Wn.2d at 270 (quoting *State v. Mak*, 105 Wn.2d 692, 701, 718 P.2d 407 (1986)).

## B. *Hopson* Factors

We examine three factors – the *Hopson* factors – when determining whether an irregularity warrants a mistrial: " '(1) its seriousness; (2) whether it involved cumulative evidence; and (3) whether the trial court properly instructed the jury to disregard it.' " *Emery*, 174 Wn.2d at 765 (quoting *Hopson*, 113 Wn.2d at 284). These factors are considered with deference to the trial court, *State v. Perez-Valdez*, 172 Wn.2d 808, 818, 265 P.3d 853 (2011), because the trial court is in the best position to discern prejudice. *State v. Lewis*, 130 Wn.2d 700, 707, 927 P.2d 235 (1996).

1.   Seriousness of the Irregularity

The first *Hopson* factor is the seriousness of the irregularity. 113 Wn.2d at 284. The question is whether the irregularity was "serious enough to materially affect the outcome of the trial." *Hopson*, 113 Wn.2d at 286.

a.   *Old Chief* Rule

The starting point in assessing the irregularity in this case is the United States Supreme Court's decision in *Old Chief v. United States*, 519 U.S. 172, 117 S. Ct. 644, 136 L. Ed. 2d 574 (1997). In *Old Chief*, the defendant offered to stipulate to a qualifying conviction, but over his objection the trial court allowed the State to present evidence that the conviction was for an assault that had caused serious bodily injury and that the defendant had been sentenced to five years in prison. 519 U.S. at 174-77. The Court held that if a defendant stipulates that he has a prior felony conviction for purposes of an unlawful possession of firearm charge, the trial court cannot allow the State to introduce into evidence the details of the conviction and punishment. *Old Chief*, 519 U.S. at 191-92. The Court reasoned that there is "no question" that "evidence of the name or nature of the prior offense generally carries a risk of unfair prejudice to the defendant." *Old Chief*, 519 U.S. at 185.

We relied on *Old Chief* in *State v. Johnson*, 90 Wn. App. 54, 950 P.2d 981 (1998). We held that the trial court abused its discretion when it failed to accept a stipulation that the defendant had been convicted of a serious offense for the purposes of a first degree unlawful possession of a firearm charge and instead allowed evidence of the defendant's prior rape conviction. *Johnson*, 90 Wn. App. at 63. We reasoned,

> Johnson's proffered stipulation, along with an appropriate jury instruction, would have proved conclusively that Johnson was a felon. Thus, the probative value of the conviction, as compared to the stipulation, was negligible. The unfair

7

prejudice was significant, i.e., there was a significant risk that the jury would declare guilt on the two assault charges based upon an emotional response to the rape conviction rather than make a rational decision based upon the evidence.

*Johnson*, 90 Wn. App. at 63.

Both *Old Chief* and *Johnson* held that when a defendant offers to stipulate that he committed a prior offense for the sole purpose of proving legal status, the trial court must accept the stipulation if the name or nature of the offense raises a risk of a verdict tainted by improper considerations. *Old Chief*, 519 U.S. at 191-92; *Johnson*, 90 Wn. App. at 63. Garcia's stipulation that he had been convicted of a serious offense triggered application of this rule, and precluded mention that his prior serious offense was for first degree robbery. As a result, there is no dispute that giving a jury instruction suggesting that Garcia had been convicted of first degree robbery was an irregularity that was "serious enough to materially affect the outcome of the trial." *Hopson*, 113 Wn.2d at 286.

b. *Young* Analysis

Division One of this court addressed a similar situation in *State v. Young*, 129 Wn. App. 468, 119 P.3d 870 (2005). Young was charged with aggravated first degree murder, first degree assault, and first degree unlawful possession of a firearm. *Young*, 129 Wn. App. at 470-71. As in this case, the State was required to prove that the defendant had previously been convicted of a serious offense as one of the elements of the unlawful possession of a firearm charge. *Young*, 129 Wn. App. at 474. Young had a previous second degree assault conviction, but the parties stipulated that the nature of this prior offense would not be presented to the jury. *Young*, 129 Wn. App. at 472. Nevertheless, when reading the charges, the trial court told the jury that the defendant had been convicted " 'of a serious offense . . . to wit:  Second Degree Assault.' "

8

*Young*, 129 Wn. App. at 471 (alteration in original). Significantly, the trial court never told the jury to disregard the disclosure. *Young*, 129 Wn. App. at 476.

Division One reversed the trial court's denial of Young's mistrial motion, holding that informing the jury of the assault conviction was "a serious irregularity that is inherently prejudicial" because that conviction and two of the defendant's current charges were for violent offenses. *Young*, 129 Wn. App. at 476. Applying the reasoning in *Old Chief* and *Johnson* to a mistrial motion, the court stated,

> When the sole purpose of the evidence is to prove the element of the prior conviction, revealing a defendant's prior offense is prejudicial in that it raises the risk that the verdict will be improperly based on considerations of the defendant's propensity to commit the crime charged. This risk is especially great when the prior offense is similar to the current charged offense.
>
> No one can seriously dispute that disclosure that an accused has been previously convicted of second degree assault is not a serious irregularity that is inherently prejudicial. Here, like the prior conviction for second degree assault, two of the current charges, are also violent felonies—murder and first degree assault.

*Young*, 129 Wn. App. at 475-76 (footnotes omitted). The court also noted that although the errors in *Old Chief* and *Johnson* related to the admission of evidence and not a statement from the court, there was no distinction between the prejudice engendered in the two contexts. *Young*, 129 Wn. App. at 476.

### c. Effect of Erroneous Instruction

The facts here are somewhat similar to those in *Young*. To prove the charge of first degree unlawful possession of a firearm, the State had to prove that Garcia had been convicted of a serious offense. RCW 9.41.040(1)(a). Although the parties stipulated that Garcia had been convicted of a serious offense, the trial court mistakenly instructed the jury that it had to find that Garcia had been convicted of first degree robbery. The jury was exposed to the erroneous

instruction on three occasions: (1) when the trial court read the incorrect instruction to the jury, (2) when the trial court provided the jury with incorrect copies of the instruction, and (3) when the State projected the incorrect instruction for the jury to view during closing argument. Further, two jurors had noted the robbery reference on their copies of the incorrect instruction.

However, the irregularity in this case is less serious than that in *Young* and the cases on which it relies. Most significantly, there was no direct evidence linking Garcia to the first degree robbery in the incorrect instruction. In *Young*, the trial court read the charges against the defendant directly from the information which expressly stated that the defendant had been convicted of second degree assault. 129 Wn. App. 471. Similarly, in both *Old Chief* and *Johnson*, the trial court allowed the actual convictions into evidence. *Old Chief*, 519 U.S. at 177; *Johnson*, 90 Wn. App. at 60. In those cases, the jury explicitly was told that the defendant had been convicted of specific crimes.

By contrast, the improper instruction in this case told the jury that in order to convict Garcia of first degree unlawful firearm possession, it had to *find* that he previously had been convicted of first degree robbery. The instruction did not affirmatively state that Garcia had in fact been convicted of that crime. And because of the stipulation, the State had not submitted any evidence that Garcia had been convicted of robbery. The absence of any direct connection between Garcia and a first degree robbery conviction mitigated the effect of the erroneous instruction.

Arguably, the instruction did at least imply that Garcia had been convicted of second degree robbery. But because the instruction did not state that Garcia actually had been convicted of robbery and there was no evidence provided at trial of any robbery conviction, the jury reasonably could have believed that the trial court mistakenly included an instruction unrelated

10

to Garcia's case. This is especially true in light of the trial court's express instruction telling the jury that the original instruction was the "wrong instruction for this case." 8 RP at 33.

Garcia emphasizes that one juror placed a star next to "Robbery" and another underlined "Robbery" and placed a question mark next to that portion of the incorrect instruction 20. However, these marks do not compel a conclusion that this instruction prejudiced the jury. The jurors simply may have been confused because there had been no evidence or argument presented at trial indicating that Garcia had been convicted of robbery.

Because there was no direct connection between Garcia and the crime referenced in the erroneous instruction, we hold that the jury's exposure to the first degree robbery reference was less serious than the type of irregularities that trigger a mistrial.

### 2. Cumulative Evidence

The second *Hopson* factor is whether the trial irregularity involved cumulative evidence. If the evidence was cumulative, a mistrial may not be necessary. 113 Wn.2d at 284. Here, there was no evidence other than the erroneously admitted jury instruction that Garcia had been convicted of first degree robbery. As a result, this factor does not provide meaningful support for either the trial court's denial of a mistrial or Garcia's challenge to that ruling on appeal.

### 3. Curative Instruction

The third *Hopson* factor is whether the trial court properly instructed the jury to disregard the irregularity. 113 Wn.2d at 284. Our Supreme Court has restated this factor as " 'whether the irregularity could be cured by an instruction.' " *Perez-Valdez*, 172 Wn.2d at 818 (quoting *State v. Post*, 118 Wn.2d 596, 620, 826 P.2d 172, 837 P.2d 599 (1992)). In other words, depending on the seriousness of the irregularity and whether the information provided to the jury was cumulative, a proper instruction may or may not be sufficient to avoid a mistrial.

No. 42890-3-II

The absence of a curative instruction was significant in *Young*. In that case, the trial court did not specifically address the unintentional disclosure with the jury and never told the jury to disregard the disclosure. *Young*, 129 Wn. App. at 476. Instead, the court merely gave a standard instruction telling the jury not to consider the contents of the information as proof of the crimes charged. *Young*, 129 Wn. App. at 476-77. The court found this instruction insufficient, stating,

> While it is presumed that juries follow the instructions of the court, an instruction that fails to expressly direct the jury to disregard evidence, particularly where, as here, the instruction does not directly address the specific evidence at issue, cannot logically be said to remove the prejudicial impression created by revelation of identical other acts.

*Young*, 129 Wn. App. at 477.

Here, the trial court took immediate steps to remedy the irregularity. After the State brought the improper jury instruction to the trial court's attention, the trial court removed the incorrect instruction from the jury's instruction packets and replaced it with the correct version. The trial court then reread the correct version of the instruction. Finally, the trial court instructed the jury:

> During closing argument, the Court realized that instruction 20 concerning Count II, the charge of Unlawful Possession of a Firearm in the First Degree, was the *wrong instruction for this case*. You have now been given the correct instruction 20 concerning Count II. You should disregard the previous instruction 20.

8 RP at 33 (emphasis added). This instruction was effective. The trial court not only directed the jury to disregard the incorrect instruction, but also implied that the incorrect instruction did not even relate to Garcia's case.

Nevertheless, Garcia argues that the trial court should have specifically referenced first degree robbery in the curative instruction to disregard. In *Young*, the appellate court disapproved

12

of a generic instruction to the jury not to consider the information's contents as proof of the crimes charged. 129 Wn. App. at 477. The court contrasted the trial court's deficient curative instruction in that case with that in *Hopson*, in which the trial court specifically instructed the jury to disregard an improper witness statement. *Young*, 129 Wn. App. at 477 (citing *Hopson*, 113 Wn.2d at 284).

We do not interpret *Young* as requiring a "proper" instruction to specifically mention details of the prior conviction. In many cases, specifically mentioning the prior conviction would have the effect of reemphasizing the irregularity and causing more prejudice to the defendant. In fact, here the parties agreed that specifically telling the jury to disregard the "robbery" portion of the instruction would have drawn unnecessary attention to the error.

Accordingly, we hold that the trial court's response to the irregularity and the instruction to disregard it was proper.

C.    Consideration of *Hopson* Factors – Effect on Verdict

The *Hopson* factors are designed to guide determination of the ultimate question in the review of the denial of a mistrial motion: whether there is a substantial likelihood that the error affected the jury's verdict. *Rodriguez*, 146 Wn.2d at 269-70. Application of these factors requires a balancing approach; they cannot be viewed in isolation from each other. The seriousness of the irregularity (which possibly could be reduced if the evidence was cumulative) must be weighed against the likelihood that the trial court's limiting instruction will eliminate any prejudice. As the court noted in *Hopson*, "in certain situations curative instructions cannot remove the prejudicial effect of evidence of other crimes." 113 Wn.2d at 284. On the other hand, for less serious irregularities a proper instruction may provide an effective cure. We must decide whether, based on the seriousness of the irregularity and whether the information

13

provided to the jury was cumulative, the irregularity was "so inherently prejudicial that it rendered the curative instruction ineffective and necessitated a new trial." *Perez-Valdez*, 172 Wn.2d at 819.

We cannot say that there is a substantial likelihood that the irregularity here affected the jury's verdict. As discussed above, the absence of any connection between Garcia and first degree robbery suggests that the irregularity in this case is on the less serious end of the spectrum – certainly less serious than in *Young*, *Old Chief*, and *Johnson*. And the trial court provided an effective instruction that not only told the jurors to disregard the incorrect instruction but also encouraged them to believe that the reference to robbery did not even involve Garcia's case. We presume that the jury followed the trial court's instructions. *State v Kirkman*, 159 Wn.2d 918, 928, 155 P.3d 125 (2007).

We also are cognizant that application of the *Hopson* factors must occur in the context of deference to the trial court, who " 'having seen and heard the proceedings, is in a better position to evaluate and adjudge than can we from a cold, printed record.' " *Perez-Valdez*, 172 Wn.2d at 819 (internal quotation marks omitted) (quoting *State v. McKenzie*, 157 Wn.2d 44, 52, 134 P.3d 221 (2006)). The record here does not support a conclusion that no reasonable judge would have denied the mistrial motion. *Emery*, 174 Wn.2d at 765.

Finally, application of the *Hopson* factors means that not every irregularity in trial – even a relatively serious one – triggers a mistrial. Our Supreme Court has noted that " '[a] defendant is entitled to a fair trial but not a perfect one.' " *State v. Davis*, 175 Wn.2d 287, 345, 290 P.3d 43 (2012) (internal quotation marks omitted) (quoting *Brown v. United States*, 411 U.S. 223, 231, 93 S. Ct. 1515, 36 L. Ed. 2d 208 (1973)), *cert. denied*, No. 12-9685, 2013 WL 1490614 (U.S.

14

Wash. Oct. 7, 2013).[2] Garcia received a fair trial despite the jury's temporary exposure to the incorrect instruction.

We hold that exposing the jury to the incorrect instruction was not so serious that the trial court's instruction could not cure any potential prejudice, and that the trial court's instruction to disregard the incorrect instruction was effective in limiting any prejudice to Garcia. Accordingly, we hold that the trial court did not abuse its discretion when it denied Garcia's mistrial motion.

II.     "GANG EVIDENCE"

Garcia argues that the cumulative effect of the erroneous jury instruction and prejudicial "gang evidence" deprived him of a fair trial and requires reversal. We disagree.

At trial, a tribal police officer testified that the place where Garcia was shot was a "known gang hangout." 1 RP at 77. Two other police officers referenced a "gang unit." 4 RP at 7; 6 RP at 63. And during closing argument, the State told the jury that Garcia "pull[ed] out a gun and d[id] the gangster shoot, boom, boom, boom." 8 RP at 9.

Garcia argues that the presentation of gang evidence was highly prejudicial and should not have been allowed at trial. However, he did not object to any of this testimony or argument below. Under RAP 2.5(a), we generally will not review claims raised for the first time on appeal, unless the party claiming the error can show the presence of an exception to that rule, such as a manifest error affecting a constitutional right. *State v. Robinson*, 171 Wn.2d 292, 304, 253 P.3d 84 (2011). Garcia asserts only an evidentiary issue related to the admission of gang evidence and does not assert any constitutional error. *See State v. Gresham*, 173 Wn.2d 405,

---

[2] *See also State v. Paumier*, 176 Wn.2d 29, 44, 288 P.3d 1126 (2012) (Wiggins, J., dissenting) (the court's "task is not to determine whether the defendant received a trial completely free of defects, but to determine whether the defendant received a fair trial") (emphasis omitted).

433, 269 P.3d 207 (2012) (evidentiary errors under ER 404(b) are not constitutional errors). And he does not provide argument or legal authority supporting our review on any other ground we could address for the first time on appeal under RAP 2.5(a). Because Garcia has failed to preserve this issue for review, we need not consider whether the trial court should have excluded this evidence.

Further, admission of the gang evidence cannot be the basis for a cumulative error argument. Even where several errors standing alone do not warrant reversal, the cumulative error doctrine requires reversal when the combined effect of the errors denied the defendant a fair trial. *Davis*, 175 Wn.2d at 345. Because we hold that Garcia failed to preserve the alleged error regarding gang evidence, this doctrine does not apply. *See State v. Embry*, 171 Wn. App. 714, 766, 287 P.3d 648 (2012) (failure to preserve claimed errors for appeal precluded defendant's cumulative error claim based on alleged unpreserved errors), *review denied*, 177 Wn.2d 1005 (2013).

III.     APPOINTMENT OF NEW COUNSEL

Garcia argues that "on remand, new counsel should be appointed based on counsel's ineffectiveness" for failing to offer to stipulate to the serious offense before trial and for failing to object to the improper jury instruction. Br. of Appellant at 29. Because we do not remand, we need not address this argument.

We affirm Garcia's convictions.

MAXA, J.

We concur:

HUNT, J.

WORSWICK, C.J.

17