**FILED**
**AUGUST 1, 2017**
In the Office of the Clerk of Court
WA State Court of Appeals, Division III

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| In the Matter of the Detention of | ) | No. 34199-2-III |
| | ) | |
| G.W. | ) | UNPUBLISHED OPINION |
| | ) | |
| | ) | |

PENNELL, J. — G.W. appeals a jury verdict authorizing 180 days' involuntary commitment at Eastern State Hospital. We affirm.

FACTS

In 2016, the State filed a petition seeking G.W.'s involuntary treatment for up to 180 days. The petition alleged G.W. was gravely disabled as a result of a mental disorder and that there was no less restrictive treatment available, short of hospitalization. The petition did not allege G.W. posed a danger to others.

Prior to trial on the petition, G.W. filed a motion in limine asking the court to exclude testimony relating to a 1998 incident during which G.W. used a firearm to shoot two volunteer firefighters. G.W. argued that if the jury heard about this incident it might seek to commit him out of fear for public safety, not because of the grave disability alleged in the petition. The State claimed the incident was relevant because G.W. had

pled not guilty by reason of insanity, was hospitalized for 10 years, and the information

was relevant to G.W.'s current mental health. The trial court agreed with the State that

the information was important, but also agreed with G.W. that it would be "extremely

prejudicial" to provide the jury with specific facts about the shooting and the use of a

firearm. 1 Verbatim Report of Proceedings (VRP) (Feb. 22, 2016) at 10. The trial court

limited testimony on the incident to the fact that G.W. had been hospitalized for 10 years

and pled not guilty to a criminal charge. The witnesses were not to testify about the use

of a firearm or the type of criminal charge.

Three witnesses testified at trial, all called by the State. While describing G.W.'s

mental health history, the State's first witness stated, "About ten years ago [G.W.] was in

Ohio where he was involved with a violent episode with some guns and a shootout."

2 VRP (Feb. 23, 2016) at 187. G.W. immediately objected and the trial court sustained

the objection. No limiting instruction was requested or given. Later, while discussing

ways in which G.W. not taking his medications could lead to contact with the legal

system, the same witness stated, "Well, the paranoid thought process often leads people to

go into such a defensive stance that they disregard the legal system, disregard laws and

society norms because they feel they have to protect themselves. In the past it happened

where there were firearms involved and—" *Id.* at 199. G.W. again objected, was

sustained, but did not request a limiting instruction. The jury was not instructed to disregard the improper testimony.

During a break in trial, G.W. orally moved for a mistrial based on the witness's violation of the court's in limine order. The court denied the motion, reasoning G.W.'s attorney objected quickly enough, no specific facts about the 1998 incident were provided to the jury, and the testimony did not link the use of the firearm to any mental disorders. The trial court left open the possibility of providing a limiting instruction to the jury at G.W.'s request. Ultimately, no request was made and no limiting instruction was given.

During closing, counsel for the State made the following argument, to which G.W. did not object:

> The concern is that if he were to leave the hospital before he is ready and before the doctor was sure that his medication was appropriately dosed that he could end up back in the hospital, that he could end up stopping his medications and becoming symptomatic, getting into some kind of trouble, *or just end up actually, to be honest he could end up dead*. That happens to patients.

2 VRP (Feb. 23, 2016) at 308 (emphasis added).

The jury entered a verdict in favor of the State. It found G.W. suffered from a mental disorder, was gravely disabled as a result of the disorder, and the State had proven there was no less restrictive alternative to involuntary treatment. The trial court entered an order committing G.W. for 180 days of involuntary treatment. G.W. appeals.

3

No. 34199-2-III
*In re Det. of G.W.*

## ANALYSIS[1]

*Denial of mistrial motion*

At issue is whether the trial court abused its discretion in denying G.W.'s mistrial motion. Relevant to our analysis is (1) the seriousness of the alleged error, (2) whether erroneously admitted evidence was cumulative, and (3) whether a proper curative instruction was given to the jury. *State v. Emery*, 174 Wn.2d 741, 765, 278 P.3d 653 (2012). A trial court abuses its discretion in denying a mistrial motion only "'when no reasonable judge would have reached the same conclusion.'" *Id.* (quoting *Sofie v. Fibreboard Corp.*, 112 Wn.2d 636, 667, 771 P.2d 711, 780 P.2d 260 (1989). The ultimate question for our review concerns whether there is a substantial likelihood that the trial irregularity affected the jury's verdict. *State v. Garcia*, 177 Wn. App. 769, 783, 313 P.3d 422 (2013).

Looking to the first applicable factor, the violation of an in limine order can sometimes amount to a serious trial irregularity. *State v. Thompson*, 90 Wn. App. 41, 46, 950 P.2d 977 (1998). The State claims no violation occurred. We disagree. Although

---

[1] Although G.W.'s 180-day detention period has expired, his case is not moot. *See In re Det. of M.K.*, 168 Wn. App. 621, 625-26, 279 P.3d 897 (2012); *see also* RCW 71.05.012; 71.05.245(3).

somewhat indirect, testimony from the State's witness unmistakably intimated G.W. had

discharged a gun during a prior criminal episode.

Nevertheless, an in limine violation does not always militate in favor of a mistrial.

*State v. Magana*, 197 Wn. App. 189, 195, 389 P.3d 654 (2016). Here, the seriousness of

the in limine violations was reduced by the limited scope of information disclosed as well

the complete lack of relevance to any issue before the jury. *See State v. Jones*, 101 Wn.2d

113, 125, 677 P.2d 131 (1984) (prejudice caused by improper prior conviction evidence

lessened due to lack of similarity to crime charged), *overruled on other grounds by State

v. Brown*, 113 Wn.2d 520, 554, 782 P.2d 1013, 787 P.2d 906 (1989). The State did not

seek G.W.'s detention based on a claim that he posed a danger to others. There was,

therefore, no risk that the jury would misuse propensity evidence to relieve the State of its

burden of proof. Viewed against the record as a whole, the State's in limine violation

does not weigh in favor of reversing the jury's verdict.

Our assessment of the other relevant factors does not tip the balance in G.W.'s

favor. Although there was no properly admitted cumulative evidence to offset the State's

improper testimony, G.W. declined the opportunity for a curative instruction. Such

instructions can be effective, even in the context of improper bad act evidence. *See, e.g.,

State v. Hopson*, 113 Wn.2d 273, 285-86, 778 P.2d 1014 (1989). This is not a case where

5

the issue before the jury was sufficiently similar to a prior bad act such that no curative instruction could be effective. *C.f. State v. Miles*, 73 Wn.2d 67, 436 P.2d 198 (1968). Because G.W. strategically declined to request such a curative instruction, this factor weighs against his claims on appeal.

The record reviewed as a whole corroborates no substantial likelihood that the improper testimony impacted the jury's verdict. Not only did the testimony have no bearing on the issues before the jury, the questions submitted by the jurors during trial confirm that the jurors never lost sight of their proper focus. Although several questions were submitted regarding G.W.'s ability to manage his medications and live on his own, the jury did not submit any questions suggesting concerns regarding G.W.'s dangerousness or access to weapons. The trial judge acted well within her discretion in denying G.W.'s mistrial motion.

*Improper closing argument*

G.W. argues the State's counsel engaged in misconduct during summation by stating that if G.W. was not detained, he could end up dead. Although misstatements can sometimes undermine a jury's verdict, *In re Detention of N.H.*, 188 Wn. App. 744, 765, 355 P.3d 294 (2015), that is not what happened here. The State's witnesses recounted the risks to G.W.'s health and safety that could occur if G.W. were released from detention

No. 34199-2-III
*In re Det. of G.W.*

prematurely, without a support system in place. From this testimony, one could infer that the risks to G.W. could be as serious as death. There was nothing improper in arguing this inference to the jury. *State v. Hoffman*, 116 Wn.2d 51, 94-95, 804 P.2d 577 (1991).

## CONCLUSION

G.W.'s order of commitment is affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Pennell, J.

WE CONCUR:


_____        _____
Lawrence-Berrey, A.C.J.                 Korsmo, J.

7