# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 57468-3-II |
| Respondent, | |
| v. | |
| ERNEST LEE WEST, JR., | UNPUBLISHED OPINION |
| Appellant. | |

VELJACIC, J. — Ernest Lee West Jr. appeals his conviction and sentence for residential burglary. West argues that he is entitled to a new trial because the trial court abused its discretion in denying his motion for a mistrial. West also argues that he is entitled to resentencing because the trial court abused its discretion in denying his request for an exceptional sentence below the standard range.

We hold that the trial court did not abuse its discretion in denying West's motion for a mistrial. We also hold that the trial court did not abuse its discretion in denying West's request for an exceptional sentence. Accordingly, we affirm West's conviction and sentence for residential burglary.

### FACTS

#### I.    THE UNDERLYING INCIDENT

On January 10, 2021, Richard Sollom visited one of his rental properties in downtown Bremerton because his tenant, Forrest Findley, had been out of the country on naval deployment for an extended period of time. Sollom did not expect to see anybody at the home during the visit.

Sollom entered the home and noticed that things were different despite visiting three days prior. He noticed food on the kitchen counter and wrappers of some kind thrown about the area. When he went to the bedroom, he found "the closet door had been open[ed], and stuff rifled through and stuff [placed] on the bed." Report of Proceedings (RP) at 325.

Sollom walked out to the living room and discovered West sleeping underneath a blanket on the couch. West woke up and introduced himself. West told Sollom that he had permission from his friend to be in the home. However, West could not identify the friend. After this brief interaction, Sollom walked outside and called the police.

At about 9:30 A.M., Alexander George, an officer for the Bremerton Police Department, arrived on the scene. Sollom and West were standing in front of the residence. George detained West and placed him in the back of the patrol vehicle.

Detective Beau Ayers arrived on the scene shortly thereafter. After *Miranda*[1] warnings, Ayers asked West if he had permission to be in the home. West replied that he did because "the forest people provided him a green vacant form." RP at 302. Ayers eventually understood West's reference to the "forest people" to mean the name "Forrest Findley"—Sollom's tenant—because his investigation revealed that name ascribed to multiple forms, documents, and papers found in opened dressers. West also told Ayers that he had been staying at the home for several days by this time.

Ayers asked West where he could find the vacant form. West replied that the document could be found in a black bag in the bedroom. West told Ayers that "there may be some of his items or his belongings in the backpack as well as a firearm." RP at 303. The firearm was not

---

[1] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

functional because it appeared to be missing the firing pin. West told Ayers that he found the firearm in one of the dressers and placed it in the bag for safety.

During the investigation, Ayers also observed a partially opened window with a palm print on it. West admitted to Ayers that the palm print was his and that he entered the residence through that window. When Ayers asked West why he did not enter through the front door, West could not provide a reason.

On January 11, the State charged West with one count of burglary in the second degree. On May 3, 2022, the State amended the information and charged West with one count of residential burglary.

II.     THE TRIAL

On May 4, the case proceeded to a jury trial.

A.      Pretrial Order

Prior to trial, West moved "[f]or an order prohibiting any mention of Mr. West legally not [being] allowed to be in possession of a firearm." RP at 309. The trial court granted the motion.

B.      Ayers's Testimony and Mistrial Motion

Ayers was the first witness in the trial. On redirect, the State elicited the following testimony from Ayers:

> Q. Detective, did [West] volunteer information about the firearm immediately?
> A. No, he did not.
> Q. Did it appear that he was hesitant to discuss the firearm?
> A. Yes.
> Q. What led you to believe that he wasn't eager to discuss the firearm?
> A. After he did disclose, I asked him if he was supposed to be in possession or obtain a firearm and he said no.
> [DEFENSE COUNSEL]: Objection, Your Honor.
> THE COURT: Sustained.
> [THE STATE]: Nothing further, Your Honor.

3

[DEFENSE COUNSEL]: Your Honor, I'd ask to be heard outside the presence of the jury.

RP at 307-08. The court excused the jurors from the courtroom.

West moved for a mistrial. West argued that Ayers's testimony relating to West's right to possess a firearm was highly prejudicial and that a limiting instruction could not remedy the prejudice.

The State argued that it "didn't try to elicit anything about the illegality of possessing the firearm" with its line of questioning and that it "forgot to admonish [the] Detective not to mention any kind of [Department of Corrections] DOC supervision status." RP at 308. The State also argued that that a curative instruction could remedy any resulting prejudice because the jury did not hear anything about West's conviction status, DOC supervision status, or prison release.

The trial court found that the State violated the pretrial order discussed above, but did not believe that there has been enough for a mistrial in this case. Accordingly, the court denied the motion.

The court then provided the following curative instruction to the jury: "Ladies and gentlemen, you are to disregard the last question as asked of this witness as well as the answer that was provided by this witness. The testimony that was provided is not to be used for any purpose in your deliberations." RP at 317.

C.      Testimony (Continued)

Findley testified that the only individuals with permission to enter the home were Sollom, Tiffany Gaul (his girlfriend), and maybe his brother. He was not aware of his brother authorizing anyone else to enter the home.

Findley also testified that he owned the black bag and normally kept it in the closet. The firearm was a gift from his brother and he was in the process of building it. He usually stores the firearm in his nightstand. He has never stored the firearm in his black bag.

Gaul similarly testified that Findley usually keeps the firearm "in the nightstand on his side of the bed." RP at 363. She was not aware that he kept the firearm anywhere else, including the black bag.[2]

D.      Closing Arguments

During closing argument, the State argued that West was guilty of residential burglary because he entered and remained unlawfully, and intended to commit theft of Findley's partially assembled firearm. More specifically, the State argued that it proved West's intent to deprive Findley of the firearm based on his actions in moving the firearm from the nightstand and "slipping" it into the black bag. RP at 419.

West did not dispute that he entered or remained unlawfully in the residence such that he would be guilty of criminal trespass in the first degree. Instead, West argued that the State failed to prove that he intended to commit a crime therein because the evidence established that he placed the firearm in the bag for "safekeeping purposes." RP at 423.

III.    JUDGMENT AND SENTENCE

The jury found West guilty of residential burglary. At sentencing, West asked the court to impose an exceptional sentence below the standard range under RCW 9.94A.535(1)(e). Despite being found competent, West argued that his capacity to appreciate the wrongfulness of his conduct, or to conform his conduct to the requirements of the law, was significantly impaired

---

[2] George testified that he might have left the firearm on the bed after examining it during his investigation.

5

because his current and previous competency evaluations clearly established a history of mental illness. West's counsel also expressed that she struggled to understand West's decision making as it related to the plea offers made to him by the State.

The trial court denied West's request for an exceptional sentence. The court reasoned: "I don't believe that there is significant or sufficient enough record for establishing a departure downward under [RCW 9.94A.535(1)(e)]. I don't think that's available to me." RP at 456.

Accordingly, the court sentenced West to 63 months of confinement, which is the bottom end of the standard range. West appeals his conviction and sentence.

ANALYSIS

I.     MOTION FOR A MISTRIAL

West argues that the trial court abused its discretion in denying his motion for a mistrial because Ayers's errant testimony was a serious trial irregularity, not cumulative, and could not be remedied by a curative instruction. We disagree.

A.     Standard of Review

We review a trial court's denial of a mistrial for abuse of discretion. *State v. Emery*, 174 Wn.2d 741, 765, 278 P.3d 653 (2012). "[W]e find abuse only 'when no reasonable judge would have reached the same conclusion.'" *Id.* (quoting *State v. Hopson*, 113 Wn.2d 273, 284, 778 P.2d 1014 (1989)).

"A mistrial should be granted when the defendant has been so prejudiced that nothing short of a new trial can insure that the defendant will be tried fairly." *State v. Gamble*, 168 Wn.2d 161, 177, 225 P.3d 973 (2010). We will overturn a trial court's decision denying a motion for a mistrial "only when there is a substantial likelihood that the prejudice affected the verdict." *Id.* "Thus, when a trial irregularity occurs, the court must decide its prejudicial effect." *Id.*

6

B.    The *Hopson* Factors

"We examine three factors—the *Hopson* factors—when determining whether an irregularity warrants a mistrial: '(1) its seriousness; (2) whether it involved cumulative evidence; and (3) whether the trial court properly instructed the jury to disregard it.'"  *State v. Garcia*, 177 Wn. App. 769, 776, 313 P.3d 422 (2013) (quoting *Emery*, 174 Wn.2d at 765).  These factors are considered with deference to the trial court because the trial court is in the best position to discern any prejudice.  *Garcia*, 177 Wn. App. at 776-77.

"The first *Hopson* factor is the seriousness of the irregularity."  *Id.* at 777.  "[A] violation of a pretrial order is a serious irregularity . . .  [The] intentional introduction of inadmissible evidence relating to criminal history is more serious than an unintentional interjection of inadmissible testimony."  *Gamble*, 168 Wn.2d at 178 (internal citation omitted).  But ultimately, "[t]he question is whether the irregularity was 'serious enough to materially affect the outcome of the trial."  *Garcia*, 177 Wn. App. at 777 (quoting *Hopson*, 113 Wn.2d at 286).  In *Hopson*, the Supreme Court held that the trial irregularity at issue was not serious enough to materially affect the outcome of the trial because the challenged testimony revealed "no information concerning the nature or number of prior convictions" and because "the jury had overwhelming evidence favoring conviction."  113 Wn.2d at 286.

"The second *Hopson* factor is whether the trial irregularity involved cumulative evidence. If the evidence was cumulative, a mistrial may not be necessary."  *Garcia*, 177 Wn. App. at 781.

"The third *Hopson* factor is whether the trial court properly instructed the jury to disregard the irregularity."  *Id.*  "Our Supreme Court has restated this factor as 'whether the irregularity could be cured by an instruction.'"  *Id.* (internal quotation marks omitted) (quoting *State v. Perez-Valdez*, 172 Wn.2d 808, 818, 265 P.3d 853 (2011)).  As a general rule, "[w]e presume that juries

follow the instructions and consider only evidence that is properly before them." *Perez-Valdez*, 172 Wn.2d at 818-19.

### C.     The Trial Court Did Not Abuse Its Discretion

Here, the first *Hopson* factor weighs against a mistrial because Ayers's testimony—while a serious trial irregularity because it introduced highly prejudicial character evidence and involved the violation of a pretrial order—was not serious enough to materially affect the outcome of the trial. Ayers only testified that "After [West] did disclose, I asked him if he was supposed to be in possession or obtain a firearm and he said no." RP at 308. Like *Hopson*, and contrary to West's contention otherwise, this statement revealed no information concerning the nature or number of his prior convictions.[3]     113 Wn.2d at 284-86.     Additionally, like *Hopson*, the jury had overwhelming evidence of guilt. *Id*. at 286. West conceded to entering and remaining in the home unlawfully. The evidence also showed a strong inference from which the jury could conclude beyond a reasonable doubt that West intended to commit theft (the crime in the residence required to amount to burglary) because he moved Findley's firearm from the nightstand and into the black bag.

West contends this evidence of intent is "weak," but in doing so, he omits mentioning that the bag also contained his belongings. Br. of Appellant at 19-20; Reply Br. of Appellant at 3. He also omits mentioning that Findley and Gaul both testified that the firearm is ordinarily placed in the nightstand and that Findley testified that he has never placed the firearm in the bag. Thus, this evidence gave rise to the inference of intent—not the fact that West had a propensity for criminal activity based on Ayers's improper testimony. Accordingly, in the context of the entire record and

---

[3] For this reason, West's reliance on *State v. Young*, 129 Wn .App. 468, 119 P.3d 870 (2005), is misplaced.

8

with deference to the trial court's finding, we conclude that Ayers's statement is unlikely to have swayed the jury.

The second *Hopson* factor weighs in favor of a mistrial. Ayers's testimony was not cumulative of other evidence in the record because no other witness testified to West not being allowed to possess a firearm.

The third *Hopson* factor weighs against a mistrial. Contrary to West's contention, the error was remedied when the trial court specifically instructed the jury to disregard Ayers's last answer and also instructed that such testimony is not to be used for any purpose in deliberations. The challenged portion of Ayers's testimony was not discussed in front of the jury, and the court "minimized its impact by moving the trial along." *Hopson*, 113 Wn.2d at 287. "We presume that juries follow the instructions and consider only evidence that is properly before them." *Perez-Valdez*, 172 Wn.2d at 818-19.

Because the *Hopson* factors weigh against a mistrial, we conclude that the trial court did not abuse its discretion in denying West's motion for a mistrial. Accordingly, we affirm West's conviction for residential burglary.

II. EXCEPTIONAL SENTENCE

West argues that the trial court abused its discretion because "it failed to recognize it could depart from the standard range based on [his] mental [health] condition." Br. of Appellant at 23. We disagree.

A. Legal Principles

"Under the Sentencing Reform Act of 1981, a trial court must impose a sentence within the standard range unless it finds substantial and compelling reasons to justify a departure." *State v. Smith*, 82 Wn. App. 153, 160-61, 916 P.2d 960 (1996). The trial court "may impose an

exceptional sentence below the standard range if it finds that mitigating circumstances are established by a preponderance of the evidence." RCW 9.94A.535(1). It is a mitigating circumstance if a "defendant's capacity to appreciate the wrongfulness of his or her conduct, or to conform his or her conduct to the requirements of the law, was significantly impaired." RCW 9.94A.535(1)(e).

When a defendant requests an exceptional sentence, our "review is limited to circumstances where the court has refused to exercise discretion at all or has relied on an impermissible basis for refusing to impose an exceptional sentence below the standard range." *State v. Garcia-Martinez*, 88 Wn. App. 322, 330, 944 P.2d 1104 (1997). "A court refuses to exercise its discretion if it refuses categorically to impose an exceptional sentence below the standard range under any circumstances." *Id*. But a court that considered the facts of a case and found no basis for an exceptional sentence has exercised its discretion, and the defendant may not appeal that ruling. *Id*.

B.      The Trial Court Did Not Abuse Its Discretion

Here, West mischaracterizes the record by contending that "the court erroneously believed it could not issue a downward departure based on [his] psychosis and schizoaffective disorder." Br. of Appellant at 28. The record demonstrates that the court was aware that it had the ability to depart from the standard range based on West's history of mental illness. However, after considering West's arguments and the competency evaluations, the court concluded that there was not a sufficient enough record for an exceptional downward sentence under RCW 9.94A.535(1)(e). Thus, the court exercised its discretion by considering the facts and concluding that no basis for an exceptional sentence existed.

West does not show that the trial court abused its discretion when it declined to impose the exceptional sentence. Accordingly, we affirm West's standard range sentence.

CONCLUSION

We affirm West's conviction and sentence for residential burglary.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Veljacic, J.

We concur:

Lee, J.

Cruser, A.C.J.