# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| In the Matter of the Personal Restraint of: | No. 60948-7-II |
| CLARA MARJORIE ROOD, | |
| Petitioner. | UNPUBLISHED OPINION |

MAXA, J. – In this personal restraint petition (PRP), Clara Rood challenges her convictions of first degree attempted murder – domestic violence, first degree assault – domestic violence, first degree robbery – domestic violence, first degree kidnapping – domestic violence, first degree burglary – domestic violence, second degree identity theft – domestic violence, and two counts of theft of a motor vehicle – domestic violence. The convictions arose from an incident in which Rood and her boyfriend Jasper Phillips beat and robbed Rood's stepfather, Robert Pullman, in his house.

We hold that (1) Rood's defense counsel was not ineffective by failing to object to the inclusion of the juror who was a law enforcement officer, and the trial court did not err by failing to dismiss the juror sua sponte; (2) the prosecutor did not engage in misconduct during opening statement by saying that Rood hit Pullman on the head with a crowbar, and defense counsel was not ineffective for failing to object; (3) the trial court did not err when it denied Rood's motion for a mistrial after Pullman mentioned her previous incarceration during his testimony; and (4)

Rood's appellate counsel did not provide ineffective assistance of counsel by failing to address on direct appeal the issues raised in this PRP. Accordingly, we deny Rood's PRP.

FACTS

*Background*

Rood lived with Pullman at his house on and off for several years. In spring of 2019, Rood and Phillips moved out of Pullman's house.

Early on August 15, 2019, Rood and Phillips entered Pullman's house through an unlocked basement door and beat Pullman with a crowbar and brass knuckles. Pullman knew that Rood and Phillips were the assailants because he recognized their voices.

Rood and Phillips demanded money and the PIN for Pullman's debit card. They tied Pullman to a chair and locked him in a bathroom. Then Rood and Phillips each took one of Pullman's trucks and left the house. They also took Pullman's wallet and personal documents. Pullman eventually escaped from the bathroom and went to his neighbor's house to get help. Law enforcement apprehended Rood and Phillips near one of Pullman's trucks later that day.

Rood was charged with first degree attempted murder – domestic violence, first degree assault – domestic violence, first degree robbery – domestic violence, first degree kidnapping – domestic violence, first degree burglary – domestic violence, second degree identity theft – domestic violence, two counts of theft of a motor vehicle – domestic violence, and first degree conspiracy to commit perjury.

*Jury Selection*

During voir dire, the following colloquy took place:

THE COURT: . . . [J]uror number 10, how is [sic] that you're connected with law enforcement?

JUROR 10: Myself, my family and my friends.

THE COURT: All right, so let's start with yourself, how are [sic] connected with law?

JUROR 10: I'm a former Oregon State Trooper, fish and wildlife officer. I currently hold an [sic] investigator licenses in Oregon and Washington.

THE COURT: And then your family member?

JUROR 10: Father-in-law, brother-in-law, Alaska State Troopers.

THE COURT: And then friends I'm sure, being involved, obviously have friends that are involved.

JUROR 10: Multiple friends.

THE COURT: Multiple friends, close friends?

JUROR 10: Yes, sir.

THE COURT: Okay, so you've got a lot of different ties to law enforcement. Do you think that the fact that you're involved in law enforcement, investigative licenses currently, that your family members are involved in law enforcement and friend involved in law enforcement, will that impact your ability to be fair and impartial?

JUROR 10: No, sir.

THE COURT: You're not gonna give the state an advantage just because you're involved in law enforcement and have friends and family members involved in law enforcement?

JUROR 10: No, sir.

THE COURT: You can listen to the evidence and apply that to the law and make a decision based solely on that?

JUROR 10: Yes, sir.

Rep. of Proc. (RP) at 170-71.

The trial court later asked juror 10 additional questions about her ability to be impartial during the proceedings. She said that she could be impartial.

Rood asked juror 10 additional questions:

> [Rood]: How long did you work for Oregon State Police?
>
> JUROR 10: Eight years.
>
> [Rood]: Eight years and what part of the state were you working in?
>
> JUROR 10: I was working at the Portland Patrol Office.
>
> [Rood]: Okay and that was with Fish and Game, you said?
>
> JUROR 10: Yes, sir.
>
> [Rood]: Okay and you had occasion to testify in court?
>
> JUROR 10: Yes, sir.
>
> [Rood]: All right and I imagine you had occasion to work with other officers outside of Fish and Game as well?
>
> JUROR 10: Yes, sir.
>
> [Rood]: And any of those relationships cause you to have any preconceived notions about the credibility of a police officer over say the credibility of a civilian?
>
> JUROR 10: No, sir.

RP at 195-96.

Defense counsel did not challenge juror 10 for cause or exercise a peremptory challenge against juror 10.

*Trial*

During opening statement, the prosecutor stated that the crime happened

> *when the defendant walked into Robert Pullman's house at three a.m., and hit [him] in the head with a crowbar*, beat him repeatedly, tied him up and left him to die, causing numerous injuries all about his head, face and body, causing a brain injury, left him to die.

RP at 241 (emphasis added). Later, the prosecutor said, "The defendant walked in, as Mr. Pullman was asleep and she hit him in the head with a crowbar." RP at 245. Defense counsel did not object.

4

Pullman gave the following testimony:

Q: What was your relationship like with Ms. Rood?

A: Kinda deteriorated *from the point Ms. Rood got out of jail* in . . .

[Rood]: Objection, move to strike.

THE COURT: Please disregard the last comment, the last statement made by Mr. Pullman.

RP at 259 (emphasis added).

Q: In the spring of 2019, did you have Ms. Rood move back into your house on Deepwood Lane?

A: Ms. Rood [sic] mother wanted her to move back into the house.

Q: And when did she move back in?

A: *After she got out of prison*.

[Rood]: Objection, move to strike.

THE COURT: Please disregard the last comment.

RP at 260 (emphasis added).

Rood subsequently moved for a mistrial based on Pullman's testimony about Rood being in prison. In an oral ruling, the court stated,

At this point in time, the court did not find that the defendant has been so prejudiced by the presentation of this, that they will disregard the court's admonishment to them to disregard [Pullman's] statement. I'm more than happy to give another limiting instruction. I did give them a limiting instruction at the time, upon request, as to disregard the testimony and the statements, but I am happy to go ahead and do that again if you believe there'd be a more appropriate limiting instruction.

RP at 300.

Rood requested an additional limiting instruction. The trial court then instructed the jury:

So, before we get started, I just wanted to go again, remind you, during the testimony of Mr. Pullman here earlier, you heard testimony referencing that at some point in time, Ms. Rood had been incarcerated. At the time that it was brought to

your attention, I did ask you to disregard that testimony. Again, I'm reminding you again you must disregard any testimony or any statement or any reference to that fact. You're not to consider it all in your deliberations or consideration in this case, so thank you very much folks.

RP at 305.

Detective Jeremy Schultz testified that he interviewed Rood while she was being held in police custody. Rood told him that she and Phillips entered Pullman's house with a crowbar and brass knuckles with the intention of robbing him. Rood admitted to Schultz that she hit Pullman with a crowbar.

Rood called Phillips to testify. Phillips testified that when he met Rood he found out that they had a lot in common, "including the fact that we were both relatively fresh out of prison." RP at 635. Later Phillips said, "Clara had gotten out, I think about a year before I did. I had spent 23 years give or take in prison." RP at 636. Rood did not object or ask for a motion to strike this testimony.

The trial court issued the following jury instruction: "Certain statements were made in this case that Defendant has been incarcerated . . . You must disregard this evidence. You may not use this evidence to infer guilt or for any other purpose." Clerk's Papers at 82.

The jury found Rood guilty of the charged offenses. The jury found that Rood was armed with a deadly weapon during the commission of five of the offenses, that she committed the crimes against a family or household member for all of the counts, and that she demonstrated an egregious lack of remorse. The jury also found that Rood used force or means likely to result in death in the commission of first degree assault.

Rood appealed her convictions and sentence. This court affirmed her convictions but remanded for resentencing to amend her offender score. *State v. Rood*, No. 55199-3-II (Dec. 13,

6

2022) (unpublished) https://www.courts.wa.gov/opinions/pdf/D2%2055199-3-II%20Unpublished%20Opinion.pdf.

Rood then filed this PRP.

ANALYSIS

A.     PRP PRINCIPLES

To prevail in a PRP, the petitioner must establish by a preponderance of the evidence (1) a constitutional error that resulted in actual and substantial prejudice or (2) a fundamental defect of a nonconstitutional nature that inherently resulted in a complete miscarriage of justice.  *In re Pers. Restraint of Meredith*, 191 Wn.2d 300, 306, 422 P.3d 458 (2018).  Establishing "actual and substantial prejudice" means more than merely showing a possibility of prejudice; the petitioner must establish that if the alleged error had not occurred, the outcome more likely than not would have been different.  *In re Pers. Restraint of Meippen*, 193 Wn.2d 310, 315-16, 440 P.3d 978 (2019).

B.     FAILURE TO DISMISS JUROR

Rood argues that she received ineffective assistance of counsel because her defense counsel did not challenge juror 10 for bias.  She also appears to argue that the trial court erred by failing to dismiss juror 10 sua sponte, resulting in the seating of a biased juror in violation of his right to an impartial jury.  We disagree.

1.     Ineffective Assistance of Counsel

The Sixth Amendment to the United States Constitution and article I, section 22 of the Washington Constitution guarantee criminal defendants the right to effective assistance of counsel.  *State v. Vazquez*, 198 Wn.2d 239, 247, 494 P.3d 424 (2021).  To prevail on an

ineffective assistance of counsel claim, a petitioner must show both that defense counsel's performance was deficient and that the deficient performance was prejudicial. *Id*. at 247-48.

Counsel's representation is deficient if, after considering all the circumstances, it falls below an objective standard of reasonableness. *Id*. To rebut the strong presumption that counsel's performance was effective, a petitioner bears the burden of establishing the absence of any legitimate strategic or tactical reason explaining counsel's conduct. *Id*. at 248. Prejudice exists if there is a reasonable probability that except for counsel's errors, the result of the proceeding would have differed. *Id*.

Rood argues that the mere fact that juror 10 was a law enforcement officer indicates that she was biased. Actual or implied bias is a basis for a challenge to a juror for cause. RCW 4.44.170(1), (2). However, nothing inherent in the status of being a police officer supports a finding of juror bias. *State v. Cho*, 108 Wn. App. 315, 324, 30 P.3d 496 (2001). "A relationship with the government, without more, does not establish bias." *Id*.

In addition, this court has recognized that "[j]ury selection involves strategic and tactical decisions for defense counsel." *State v. Lawler*, 194 Wn. App. 275, 290, 374 P.3d 278 (2016). And we must presume defense counsel's performance was effective. *Vazquez*, 198 Wn.2d at 248. Therefore, we presume that defense counsel wanted juror 10 to sit on the jury despite her background. *See Lawler*, 194 Wn. App. at 290. Indeed, both the trial court and Rood's defense counsel questioned juror 10 about her connections with law enforcement and her ability to remain fair and impartial. Juror 10 repeatedly stated that she could be a fair and impartial juror.

Rood also claims that her defense counsel was deficient because counsel disregarded her demand to strike juror 10. However, we cannot address this assertion because it is based on

matters outside the record, and Rood has not provided any evidence to support this claim. *State v. Alvarado*, 164 Wn.2d 556, 569, 192 P.3d 345 (2008).

Accordingly, we hold that Rood's counsel was not deficient in failing to challenge juror 10.

2.  Sua Sponte Dismissal

Rood appears to argue that the trial court erred by failing to dismiss juror 10 sua sponte, resulting in the seating of a biased juror in violation of his right to an impartial jury. A trial court has the duty to dismiss an unfit juror even without a challenge from a party. RCW 2.36.110; CrR 6.4(c)(1); *Lawler*, 194 Wn. App. at 284. However, "[w]e afford great deference to the trial court's assessments concerning [juror] bias." *State v. Smith*, 3 Wn.3d 718, 724, 555 P.3d 850 (2024).

Here, the mere fact that juror 10 was a law enforcement officer did make her unfit to serve as a juror. *See Cho*, 108 Wn. App. at 324. Therefore, there was no basis for the trial court to dismiss juror 10 sua sponte.

C.  PROSECUTOR'S OPENING STATEMENT

Rood argues that the prosecutor engaged in misconduct during opening statement by saying in opening statement that Rood hit Pullman on the head with a crowbar, and that defense counsel was ineffective for failing to object. We disagree.

1.  Prosecutorial Misconduct

To establish prosecutorial misconduct, a defendant must show that the prosecutor's conduct was both improper and prejudicial in the context of the record and all of the circumstances of the trial. *State v. Loughbom*, 196 Wn.2d 64, 70, 470 P.3d 499 (2020).

A prosecutor's " 'opening statement should be confined to a brief statement of the issues of the case, an outline of the anticipated material evidence, and reasonable inferences to be drawn therefrom.' " *Id.* at 76 (quoting *State v. Campbell*, 103 Wn.2d 1, 15-16, 691 P.2d 929 (1984)). "During an opening statement, a prosecutor may state what the State's evidence is expected to show." *State v. Magers*, 164 Wn.2d 174, 191, 189 P.3d 126 (2008).

The prosecutor made the following comment during opening statement:

> It happened when the defendant walked into Robert Pullman's house at three a.m., and hit [him] in the head with a crowbar, beat him repeatedly, tied him up and left him to die, causing numerous injuries all about his head, face and body, causing a brain injury, left him to die.

RP at 241. The prosecutor later stated again that Rood had hit Pullman in the head with a crowbar. During trial, Detective Schultz testified that Rood admitted to him that she hit Pullman with the crowbar. Therefore, the prosecutor's opening statement was not improper because it accurately described the expected evidence in the case. Accordingly, we reject Rood's prosecutorial misconduct claim.

### 2. Ineffective Assistance of Counsel

As noted above, to prevail on an ineffective assistance of counsel claim, a petitioner must show that defense counsel's performance was deficient. *Vazquez*, 198 Wn.2d at 247. A person claiming ineffective assistance of counsel based on a failure to object must show that the objection likely would have been sustained. *Id.* at 248. Here, because the prosecutor's opening statement was not improper, any objection would not have been sustained. Accordingly, we reject Rood's ineffective assistance of counsel claim.

## D. MOTION FOR MISTRIAL

Rood argues that the trial court erred when it denied her motion for a mistrial after Pullman mentioned that Rood previously had been incarcerated. We disagree.

1.  Legal Principles

We review a trial court's denial of a mistrial motion for an abuse of discretion. *State v. Emery*, 174 Wn.2d 741, 765, 278 P.3d 653 (2012). A trial court's denial of a mistrial is an abuse of discretion only when no reasonable judge would have reached the same conclusion. *Id*.

"A trial court's denial of a mistrial motion will be overturned only when there is a substantial likelihood that the error affected the jury's verdict." *State v. Garcia*, 177 Wn. App. 769, 776, 313 P.3d 422 (2013). The determinative issue is whether the defendant has been so prejudiced that a new trial is required to treat the defendant fairly. *Emery*, 174 Wn.2d at 765.

In evaluating whether a trial irregularity warrants a mistrial, we consider three factors: (1) the seriousness of the irregularity, (2) whether the irregularity involved cumulative evidence, and (3) whether the trial court properly instructed the jury to disregard the evidence. *Id*. We take a balancing approach in assessing the factors, which are designed to determine whether there is a substantial likelihood that the irregularity affected the jury's verdict. *Garcia*, 177 Wn. App. at 783. And these factors are considered with deference to the trial court because the trial court is in the best position to discern prejudice. *Id*. at 776-77.

2.  Analysis

Pullman stated that Rood "got out of jail" and that she "got out of prison." RP at 259, 260. After both statements the trial court sustained Rood's objections and directed the jury to disregard the statements.

A witness's improper statement about a defendant's prior bad acts may be a serious irregularity. *State v. Babcock*, 145 Wn. App. 157, 163-64, 185 P.3d 1213 (2008). But the other two mistrial factors mitigated any prejudice. First, Pullman's testimony ended up being cumulative because Phillips also twice testified, without objection, that Rood had been in prison.

Second, the trial court struck Pullman's statements from the record and instructed the jury to disregard them. The court also gave an additional instruction to the jury to disregard the testimony. The trial court has broad discretion to cure trial irregularities when the alleged error is an improper statement by a testifying witness. *State v. Gamble*, 168 Wn.2d 161, 177, 225 P.3d 973 (2010).

In addition, the seriousness of the improper statement was diminished by the overwhelming evidence against Rood. Pullman recognized Rood and Phillips' voices while they attacked him. The police apprehended Rood near one of Pullman's trucks. Rood confessed to Detective Schultz that she and Phillips entered Pullman's house with a crowbar and brass knuckles with the intention of robbing him. Rood admitted that she hit Pullman with the crowbar. Therefore, evidence implying that Rood may have been incarcerated likely would not have affected the outcome of the trial.

We conclude that the trial court did not abuse its discretion when it denied Rood's motion for mistrial.

E.     INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL

Rood argues that she received ineffective assistance of counsel because her appellate counsel failed to raise on appeal the issues raised in this PRP. As discussed above, we hold that none of Rood's PRP claims have merit. Therefore, we reject Rood's claim.

CONCLUSION

We deny Rood's PRP.

No. 60948-7-II

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

MAXA, J.

We concur:

CRUSER, C.J.

LEE, J.